992 F.2d 1223
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jeffrey C. COOPER, Defendant-Appellant.
 No. 92-4036.
 United States Court of Appeals, Tenth Circuit.
 April 22, 1993.
 
 Before SEYMOUR, ANDERSON and EBEL, Circuit Judges.
 ORDER AND JUDGMENT*
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Jeffrey C. Cooper appeals his conviction and sentence for distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1). As to his conviction, he contends that the district court erred in denying his motion for a mistrial based on the grounds that the government improperly introduced evidence of other crimes, wrongs or acts prohibited under Fed.R.Evid. 404(b), and that such evidence affected the outcome of the trial. The government has conceded on appeal that the district court erred in imposing sentence. Brief of Plaintiff/Appellee at 7-8, 12. The remaining question is whether we should remand with directions that the district court impose the mandatory minimum sentence of 120 months, or whether a full sentencing hearing, at which evidence can be offered, is permitted.
 
 
 3
 We hold that the district court did not abuse its discretion in denying the motion for a mistrial, and that the district court should conduct a new sentencing hearing at which objections, evidence, and argument may be heard as fully as in an original sentencing hearing. Accordingly, we affirm the judgment of conviction, but vacate the sentence and remand for a resentencing hearing and resentencing.
 
 I.
 BACKGROUND
 
 4
 Detective Edward Lucas is an undercover officer with the Murray City, Utah Police Department, assigned to the Metropolitan Narcotic Strike Force, a coordinated drug interdiction effort of law enforcement agencies in the Salt Lake City area. On May 3, 1991, he went to the home of Patricia Jones in Salt Lake City to purchase cocaine base. While Detective Lucas was in the living room, Patricia Jones paged her distributor and received a return call which was broadcast into the living room over a speaker phone and was clearly audible to Detective Lucas. The distributor said that he was on his way to Patricia Jones's house. In response to a second page a few moments later, the distributor said he was outside the house. Detective Lucas, who could hear both sides of the conversations over the speaker phone, recognized the voice as that of a person who, at some unidentified previous time, had identified himself over the phone as "J.C." Detective Lucas gave Patricia Jones the money for the drugs, and she went outside to purchase the cocaine base.
 
 
 5
 Meanwhile, Agent Kelly Call, who was backing up Detective Lucas in surveillance, saw a blue Chevrolet van arrive at a parking lot adjacent to Patricia Jones's house. He saw a man fitting Mr. Cooper's description and wearing a black and red plaid shirt and blue jeans get out of the van, talk on a mobile phone, and put the mobile phone back into the van before walking to the other side of the van, out of sight. Agent Call was in auditory contact with Detective Lucas through a "bug." Through the "bug," over the speaker phone's broadcast in the house, he heard the distributor tell Patricia Jones that he (the distributor) had arrived at the house. At the same time, the man beside the blue van in the parking lot was speaking on his mobile phone.
 
 
 6
 A third police officer, Detective James Evans, was also in the same parking lot in back-up and surveillance. He observed the arrival of a blue Chevrolet van, bearing Utah license plate number 708 DTT. He observed the van's driver with a mobile phone beside the van during this time period, wearing a red and black plaid shirt and blue jeans. He identified the driver as Mr. Cooper.
 
 
 7
 Patricia Jones left the house, and from inside the house through the window Detective Lucas saw her approach a man in her driveway. Detective Lucas did not get a view of the man's face, but he did see that the man was wearing a red and black plaid shirt and blue jeans and that he fit the description of Mr. Cooper. There were other individuals in the house, and Detective Lucas did not want to arouse their suspicions, so he did not linger by the window, moving across the room to a couch instead. When Patricia Jones returned to the house, Detective Lucas accepted 11.7 grams of cocaine base from her, paid her additional money for her part of the transaction, and left the house.
 
 
 8
 Detective Lucas was driving out of the neighborhood when he saw a blue Chevrolet van with Utah license plate number 780 DTT. When he drove up beside the van, he saw that the driver was wearing a red and black plaid shirt. Detective Lucas recognized the driver as Mr. Cooper from photos he had seen previously.
 
 
 9
 Evidence introduced at trial established that the blue Chevrolet van's license plates were registered to a woman named Darlene Cooper, who gave the address for a Salt Lake City apartment as part of the van's state motor vehicle registration. The lease for that apartment during that period of time was signed by Darlene and Jeffrey Cooper.
 
 
 10
 The pivotal issue at Mr. Cooper's trial was the identification of Mr. Cooper as the individual from whom Patricia Jones received the 11.7 grams of cocaine base on May 3, 1991. Neither Agent Call nor Detective Evans saw Patricia Jones purchase the cocaine base because the van blocked their view. Detective Lucas did not see the sale because he withdrew from the window area of the living room, not wanting to arouse suspicion. However, there were three common elements in the identification testimony of Detective Lucas, Agent Call, and Detective Evans: (1) their descriptions of the distributor all matched that of Mr. Cooper; (2) their descriptions of the shirt that the distributor was wearing at the sale matched that worn by Mr. Cooper while driving the blue van, as observed after the sale by Detective Lucas; and (3) the notes of the license plate number of the blue van at the scene of the sale (708 DTT) was nearly identical to that of the blue Chevrolet van Mr. Cooper was driving shortly after the sale (780 DTT). In addition, the state motor vehicle department's records revealed that the van was registered to a woman with whom Mr. Cooper was apparently living at that time.
 
 II.
 MOTION FOR MISTRIAL
 
 11
 Mr. Cooper contends that "[t]he district court abused its discretion in denying the defendant's motion for mistrial, after the government agent made repeated references to his prior criminal contacts with the defendant." Defendant/Appellant's Opening Brief at 19. Based on this claim of error, he requests that we reverse his conviction and remand for new trial. Id. at 25.
 
 
 12
 The specific testimony to which Mr. Cooper objects on appeal was as follows: (1) Detective Lucas was asked how he knew the person driving the blue van after the sale was the same person that transferred the cocaine base to Patricia Jones. He replied that he recognized the large block red and black plaid shirt the distributor was wearing, and added, "I also knew that I was dealing with J.C. or J.C. Cooper from my investigative work ..." R.Vol. II at 19. Mr. Cooper's counsel objected at trial, and the objection was sustained. (2) Detective Lucas admitted that he could not see the face of the man who delivered the cocaine base to Patricia Jones and was asked how he identified the man as Mr. Cooper. He responded, "I had seen photographs of this individual before and after the investigation." Id. at 23. Counsel made no objection at trial. (3) Detective Lucas was asked whether Mr. Cooper looked any different on the day he was driving the van than he looked in court on the day of trial. He responded, "Judging from the previous photos, his hair was either shorter or tucked under his hat." Mr. Cooper's counsel's objection at trial was again sustained. Id. at 36. No curative instruction was requested or given. Shortly thereafter, counsel moved for mistrial, stating,
 
 
 13
 Detective Lucas, on at least three occasions ... had made several references to the prior contact that he has had with Mr. Cooper. There is clear indication here, given the background of what he has been doing here, in this period of time that he has had contact--there is clear indication that those contacts that he was making with other unindicted drug charges, other attempts, I think that is clearly improper.
 
 
 14
 And because that is the main issue in this case, the identification, that becomes even more important as we--the prejudice that gives the jury now to have before it evidence of prior crimes.
 
 
 15
 Id. at 44-45. The district court responded that it did not "think there [was] sufficient here to taint trial for a mistrial." Id. at 45. Mr. Cooper renewed his motion for mistrial after the close of evidence, R.Vol. III at 39-40, which the district court denied. Id. He cited denial of his motion for mistrial as grounds for his motion for new trial, R.Vol. I tabs 57, 59, which motion the district court also denied, stating:
 
 
 16
 Detective Lucas, in his testimony, made no references to prior drug activity of defendant Cooper. He made references to having ... seen Cooper's picture, but did not testify as to the ... contents of the picture. Therefore, the Court concludes Detective Lucas' testimony could not have created a prejudicial inference. Moreover, there was sufficient identification of Cooper by other witness [sic] on which the jury could have based its verdict.
 
 Id. tab 65 at 2.[1]
 
 17
 Mr. Cooper's contemporaneous, sustained objections at trial were based on Fed.R.Evid. 404(b), which provides, in pertinent part:
 
 
 18
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,
 
 
 19
 ....
 
 
 20
 On appeal, Mr. Cooper again relies on Rule 404(b) and argues that United States v. Westbo, 576 F.2d 285, 291 (10th Cir.1978) ("evidence of illegal activities other than those charged is ordinarily inadmissible"), overruled on other grounds, United States v. Hopkins, 744 F.2d 716 (10th Cir.1984), is controlling.
 
 
 21
 The government argues on appeal that "there was no evidence of other crimes introduced." Brief of Plaintiff/Appellee at 9. It contends that Detective Lucas's testimony was "simply completely neutral statements," without reference to prior crimes. Id. at 10.
 
 
 22
 We review denial of motion for mistrial for abuse of discretion. United States v. Easter, 981 F.2d 1549, 1554 (10th Cir.1992). "This claim of error is evidentiary, not constitutional." United States v. Short, 947 F.2d 1445, 1454 (10th Cir.1991), cert. denied, 112 S.Ct. 1680 (1992). However, we do review the record "to determine whether appellants' right to a fair and impartial trial was impaired." United States v. Pinelli, 890 F.2d 1461, 1473 (10th Cir.1989), cert. denied, 495 U.S. 960 (1990).
 
 
 23
 The district court did not abuse its discretion when it denied Mr. Cooper's motion for mistrial. It is clear that none of the testimony of which Mr. Cooper complains was evidence of another crime, wrong, or act. The testimony makes no description of such activity. In addition, the evidence was not introduced to define Mr. Cooper's character in order to show that he was a person capable of participating in drug distribution. To the contrary, Detective Lucas was attempting to substantiate his own identification of Mr. Cooper as the individual who distributed the cocaine base to Patricia Jones. While it might be reasonable, considering that the witness was an undercover policeman, for the jury to infer from the disputed testimony that the defendant had been involved with the police to the extent that his voice and face were known to them, this inference does not fall within the prohibition of Fed.R.Evid. 404(b). We perceive no abuse of discretion in the district court's denial of Mr. Cooper's motion for mistrial.
 
 
 24
 Even if we agreed with Mr. Cooper's assessment of error in the way the district court handled Detective Lucas's testimony, such error would have been harmless. See United States v. Jefferson, 925 F.2d 1242, 1255 (10th Cir.) ("A harmless nonconstitutional error is one that did not have a 'substantial influence' on the outcome in trial nor does it 'leave[ ] one in "grave doubt" as to whether it had such effect.' ") (quoting United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir.1990)), cert. denied, 112 S.Ct. 238, and 112 S.Ct. 239 (1991). In the case before us, we agree with the district court that the disputed testimony did not have a substantial influence on the outcome of the trial. See R.Vol. I tab 65 at 2. There was strong testimony independent of that given by Detective Lucas establishing the elements of the charge.
 
 III.
 MISAPPLICATION OF THE GUIDELINES
 
 25
 Mr. Cooper was charged with Patricia Jones and a woman named Vickie Cooper under a five-count superseding indictment. The first two counts of the superseding indictment involved sales by Patricia Jones of a total of 3.2 grams of cocaine base; the third count was the charge for which Mr. Cooper was convicted, aiding and abetting the sale of 11.7 grams of cocaine base on May 3, 1991; the fourth count, which was dismissed on the government's motion before trial, charged Patricia Jones and Mr. Cooper with selling 5.4 grams of cocaine base; and the fifth count charged Patricia Jones and Vickie Cooper with selling 10.7 grams of cocaine base. Mr. Cooper's conviction carried a statutory mandatory minimum sentence of 120 months. 21 U.S.C. § 841(b)(1)(B) (mandatory minimum for conviction of distribution of more than five grams of cocaine base by a defendant with a previous conviction).
 
 
 26
 Under the guidelines, a drug distribution conviction carries a sentencing range calculated from the weight of the drugs the defendant was convicted of distributing, plus the weight of additional drugs for which the court finds the defendant responsible as part of a common scheme or plan with the offense of conviction, U.S.S.G. §§ 1B1.3(a)(1), if there are "sufficient indicia or reliability to support its probable accuracy." U.S.S.G. § 6A1.3; United States v. Johnson, 971 F.2d 562, 573 (10th Cir.1992). This weight determines the baseline offense level (BOL), U.S.S.G. § 2D1.1, from which a convicted drug distributor's sentence is computed from the Sentencing Table, U.S.S.G. Ch. 5, pt. A. Disputed factors concerning sentencing are resolved under the procedure set forth in Fed.R.Crim.P. 32(a)(1). U.S.S.G. § 6A1.3.
 
 
 27
 Mr. Cooper's presentence report calculated his BOL to be 28, including responsibility for the weight of the cocaine base involved with the third count of the indictment, for which he was convicted (11.7 grams), plus the weight of the cocaine base involved in all four other counts (an additional 19.3 grams). When combined with Mr. Cooper's criminal history of IV, this translated to a sentencing range from 110-137 months. Because the statutory mandatory minimum sentence was 120 months, the effective sentencing range under the presentence report was thus 120-137 months.
 
 
 28
 Mr. Cooper submitted a written objection to the presentence report, arguing that there was insufficient evidence, United States v. Bernaugh, 969 F.2d 858, 864 (10th Cir.1992) ("The government must prove the quantity of drugs by a preponderance of the evidence."), or information with sufficient indicia of reliability in the presentence report, United States v. Padilla, 947 F.2d 893, 896 (10th Cir.1991), to connect Mr. Cooper with counts I, II, IV, or V of the indictment. Mr. Cooper argued that he should be sentenced under a BOL of 26, the appropriate level for the distribution of 11.7 grams of cocaine base, the quantity which he was convicted of distributing. With a criminal history level of IV, the sentencing range for a BOL of 26 is 92-115 months. Because this sentencing range is less than the statutory minimum mandatory, had the district court adopted Mr. Cooper's objections, his sentence would have been required to have been the statutory minimum mandatory sentence of 120 months.
 
 
 29
 However, at the sentencing hearing, Mr. Cooper's counsel, counsel for the government, and the district court judge all operated under the erroneous impression that the sentencing range for a BOL of 28 was 92-115 months. The two attorneys and the district court judge agreed that, under this (erroneous) interpretation of the Sentencing Table, Mr. Cooper's objections to the inclusion of relevant conduct were moot because the statutory minimum was greater than the longest sentence in that sentencing range. R.Supp.Vol. III at 3-5.[2] Because of this ruling, no evidence was offered to the court at the sentencing hearing to support the presentence report's inclusion of counts I, II, IV, and V as relevant conduct or to support Mr. Cooper's objections to the presentence report.
 
 
 30
 The district court then immediately proceeded to sentence Mr. Cooper under the correct sentencing range for a BOL of 28, 110-137 months, without any comment or objection from either of the attorneys, and without making findings as to relevant conduct or as to Mr. Cooper's filed objections to the presentence report. The court stated:
 
 
 31
 The Court finds or adopts the factual findings and guideline application in the presentence report. I am going to find that the total offense level in this matter is twenty-eight. The criminal history category is four. The guideline sentencing table is one hundred ten to one hundred thirty-seven months. But because of the minimum mandatory in this matter it is one twenty to one hundred thirty-seven months.
 
 
 32
 Id. at 6. The court imposed the maximum sentence within that range, 137 months. Id. at 7.
 
 
 33
 Thus, Mr. Cooper's sentence was based on the quantity of drugs listed in the presentence report as relevant conduct. The presentence report, in turn, was unsupported by evidence and Mr. Cooper's objections to it were not addressed by the court because of a simultaneous misinterpretation of the sentencing guidelines by the assistant United States attorney, the defense counsel, and the district court judge.
 
 
 34
 "We review factual findings of the district court as to the amount of drugs involved in the defendant's criminal conduct for clear error." Padilla, 947 F.2d at 896. "A trial court's finding will be deemed clearly erroneous when, although there is some evidence to support it, upon review of the entire record the appellate court is left with the definite and firm conviction that a mistake has been made." Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1384 (10th Cir.1991) (citing Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985)).
 
 
 35
 In light of the mistaken basis for the agreement among counsel for the government, counsel for the defendant, and the district court judge, the court's adoption of the facts in the presentence report was clearly erroneous. This error resulted in a misapplication of the guidelines and a fundamentally unfair sentence. See United States v. Smith, 919 F.2d 123, 124 (10th Cir.1990) ("[B]asing a sentence on the wrong Guideline range constitutes a fundamental error affecting substantial rights within the meaning of Fed.R.Crim.P. 52(b)."); accord United States v. Washington-Williams, 945 F.2d 325, 326 (10th Cir.1991). We are required by statute to remand the case for resentencing under these circumstances. 28 U.S.C. § 3742(f)(1) ("If the court of appeals determines that the sentence [ ] was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate."). The government concedes that Mr. Cooper's sentence should be vacated and the case remanded for resentencing.[3]
 
 
 36
 The only remaining issue is the parties' disagreement about the procedure in the district court on remand for resentencing. The government requests that we remand "to allow the court to have a sentencing hearing and then impose the proper sentence under the Guidelines." Brief of Plaintiff/Appellee at 8. The government urges the court to hold a hearing at least in part because it
 
 
 37
 admits and concedes that the sources of information the court considered [at sentencing] were not set forth in the [presentence report] and so the indicia of reliability was not evident and on the record. The statements in the [presentence report] were indeed conclusory and did not set forth the sources of the information to enable the court below to determine their probable accuracy.
 
 
 38
 Brief of Plaintiff/Appellee at 8 (emphasis in original).
 
 
 39
 Mr. Cooper, while not abandoning his previous objections to the presentence report, contends that the government should not now be entitled to "produce the evidence it chose not to present at the original hearing." Defendant/Appellant's Reply Brief at 2. Mr. Cooper relies on a theory of double jeopardy, drawing an analogy between the sentencing hearing and the government's single opportunity to present evidence at a suppression hearing. Id. at 2-3. He terms the government's lack of presentation of evidence at the sentencing hearing a "strategic decision," id. at 2, which it should be forced to abide with on remand.
 
 
 40
 We disagree. It is clear from the record that the decisions of both counsel and of the district court at the sentencing hearing originated in a mutual error which was made before the government had the opportunity to present any evidence in support of the BOL calculation in the presentence report. On remand, the parties should be in the position they were in at the time the mutual error occurred, when sentencing hearing began. At that time, Mr. Cooper's objections to the presentence report had been filed with the district court, and the government had yet to have the opportunity to present evidence to support the recommendations of the presentence report. Upon remand, then, the district court shall hold a sentencing hearing to resolve Mr. Cooper's objections to the presentence report, prior to the imposition of sentence.
 
 
 41
 We AFFIRM Mr. Cooper's conviction, VACATE his sentence, and REMAND this matter to the district court for resentencing. Judge Seymour concurs in the result only.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 At trial, Mr. Cooper's counsel also objected to Detective Lucas's testimony that he recognized the voice he heard over the speaker phone at Patricia Jones's house when she was talking with the distributor from whom she received the 11.7 grams of cocaine base. Detective Lucas stated that the person on the speaker phone had identified himself as "J.C." when Detective Lucas had heard the voice on the phone previously. R.Vol. II at 14-15. Mr. Cooper's counsel's objection to this testimony was overruled. Id. at 15. This piece of evidence was apparently referred to in Mr. Cooper's oral motion for mistrial. Id. at 44 ("and also in connection with my objection which you overruled in the first instance"). Mr. Cooper does not include this matter in his objections on appeal
 
 
 [2]
 The colloquy at the sentencing hearing was as follows:
 [DEFENSE COUNSEL:] My objection to the presentence report--and I wanted to get those in the record ... [includes] the relevant conduct enhancements that went into the probation [department's] calculation.
 But as it stands now it is sort of a moot question. Because with these enhancements I think the probation [department's] calculation brought it up to nine years and one month [sic]. The minimum is a hundred twenty-nine. [sic] So we are ten months more than that calculation in any event. So that is a moot question.
 ....
 [ASS'T U.S. ATTORNEY:] ... I think [defense counsel] has covered it.
 We are looking at a minimum mandatory of ten. And whether Mr. Cooper is responsible for any of the other offenses is not a factor that the Court has to consider.
 THE COURT: Yes, that was my view as I reviewed this matter counsel. Except I believe [defense counsel] has accurately stated the fact that this is a minimum mandatory sentence. And so I think his position with respect to sentencing factors would be made moot.
 R.Supp.Vol. III at 3-5.
 
 
 [3]
 On appeal, the government also notes that inclusion of the weight of cocaine base involved in counts I, II, and IV would not enhance Mr. Cooper's BOL from level 26. However, it continues to assert that Mr. Cooper should be held responsible for the weight of the cocaine base involved in count V, as the only disputed factor in the presentence report that would determine whether Mr. Cooper were assigned a BOL of 26 or a BOL of 28 on resentencing. Brief of Plaintiff/Appellee at 6-7