**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 5 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

vs.

EMILIO CERRATO-REYES,
JOSE MANUEL OSUNA-REYES,
JESSICA ANN MEJIA,

      Defendant-Appellant.

No. 98-4059
No. 98-4082
No. 98-4103

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:97-CR-204C)

Bel-Ami de Montreux, Montreux Frères, P.C., Salt Lake City, Utah, for Emilio Cerrato-Reyes, Defendant-Appellant.

Stephen R. McCaughey, McCaughey & Metos, Attorneys at Law, Salt Lake City, Utah, submitted a brief for Jose Manuel Osuna-Reyes, Defendant-Appellant.[1]

Robert H. Copier, Attorney at Law, Salt Lake City, Utah, for Jessica Ann Mejia, Defendant-Appellant.

Richard D. McKelvie, Assistant United States Attorney (Paul Warner, United States Attorney, with him on the briefs), Salt Lake City, Utah, for United States of America, Plaintiff-Appellee.

---

    [1] Case No. 98-4082, United States v. Osuna-Reyes, was submitted on the briefs. The other two cases were orally argued.

Before **BRORBY**, **KELLY**, and **MURPHY**, Circuit Judges.

**KELLY**, Circuit Judge.

Defendant-Appellant Emilio Cerrato-Reyes appeals his conviction for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Defendants-Appellants Jose Manuel Osuna-Reyes and Jessica Ann Mejia appeal from their sentences after being convicted for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1), and we affirm.

## I. Background

Mr. Cerrato-Reyes and Mr. Osuna-Reyes were tried jointly on charges arising from a drug transaction. Mr. Cerrato-Reyes was found guilty by the jury, but Mr. Osuna-Reyes' case ended in a mistrial after the jury was unable to reach a verdict. Mr. Osuna-Reyes was subsequently found guilty in his second jury trial. Ms. Mejia was also involved in the drug transaction. She entered into a plea agreement with the government and pled guilty to the offense.

In this appeal, Mr. Cerrato-Reyes contends that the district court erred (1) in denying his motion for a mistrial based on juror bias, and (2) in failing to clearly state in its entrapment instruction that the government carried the burden

of disproving entrapment. Mr. Osuna-Reyes challenges the district court's decision to enhance his sentence for obstruction of justice, and Ms. Mejia argues that the court erred in failing to force the government to move for a downward departure based on her substantial assistance.

## II. Emilio Cerrato-Reyes

### A. Juror Bias

Mr. Cerrato-Reyes claims that the district court erred in denying his motion for a mistrial based on a juror's dishonesty during voir dire and/or the juror's actual or implied bias. We review the denial of a motion for a mistrial or for a new trial for abuse of discretion. See United States v. Begay, 144 F.3d 1336, 1339 (10th Cir. 1998); United States v. Ailsworth, 138 F.3d 843, 846 (10th Cir.), cert. denied, 119 S. Ct. 221 (1998). However, when the court's decision rests on an issue of law, we review de novo. See Ailsworth, 138 F.3d at 846.

After Mr. Cerrato-Reyes had been convicted and during the jury's deliberations on Mr. Osuna-Reyes' case, one of the jurors approached the judge and expressed fear for her safety, based on a prior experience with drug dealers while on a mission in Texas. The next day, the court informed counsel of the encounter with the juror and decided to question the juror on the record. The juror explained that several Hispanics had moved in one block south of her house.

She was disturbed that "25 of them moved into one house," IV Tr. at 127, and was concerned about the constant police presence in her fiancee's neighborhood, where some of the events at issue took place. She explained that she had become frightened in this case involving drug charges when she remembered a prior incident where some African-American crack cocaine dealers came to her door and demanded money. She was fearful because she was required to put her name and address on a juror parking slip and she did not know who had access to that information.

> In recounting her recognition of Mr. Osuna-Reyes, the juror explained:

> During the — when the witnesses were — I don't remember which witness, but I glanced over, and he was just glaring. And I realize that that's just the culture, the way they think, the way they act, their dispostions [sic], because I've worked with Spanish before. Latinos are just — they have a tendency to just get this glazed look, and that's just the way they are. I don't know why. I mean we all do it. But just the way he was looking at us, and he was looking right at me. And I was like, "Okay. I'm not paranoid. I'm just going to ignore him."

Id. at 122-23. She also opined that the drug dealers she had encountered were "clueless" and likely had poor memories. Still, she steadfastly maintained that she was not prejudiced; that "Hispanics are just as innocent and good as the next person," id. at 124; and that her experiences working with Hispanics while on a mission in Texas were mostly positive. In addition to her concern about twenty-five Hispanics in one house, the juror was also disturbed by the presence of "all

kinds of hoodlums" at the house of her unemployed next-door neighbor, a Caucasian.  Id. at 128.  She maintained that she was able to differentiate between her experience with the crack cocaine dealers and the defendants and witnesses at trial.  Finally, she asserted that her prior experiences made her more open-minded than her fellow jurors, and that she was not fearful during deliberations.

Mr. Cerrato-Reyes claims that this juror's alleged dishonesty during voir dire, in failing to respond to the court's questions both about prejudice against Hispanics and about prior experiences with drug dealers, prevented him from raising a challenge for cause.  In addition, he asserts that even if the juror honestly but mistakenly failed to respond, her answers when questioned in chambers by the court and by counsel demonstrate an actual or an implied bias against Hispanics and drug dealers, or both.

### 1.  The McDonough Power Test

Under the Sixth Amendment to the U.S. Constitution, an accused has a right to trial by an impartial jury.  Though no trial can be perfect, see Brown v. United States, 411 U.S. 223, 231-32 (1973), "[o]ne touchstone of a fair trial is an impartial trier of fact — a jury capable and willing to decide the case solely on the evidence before it."  McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984) (quotation marks and citation omitted); see Gonzales v. Thomas,

99 F.3d 978, 983 (10th Cir. 1996). "Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors. . . . The necessity of truthful answers . . . is obvious." McDonough Power, 464 U.S. at 554.

Mr. Cerrato-Reyes maintains that the juror was untruthful by failing to respond when the court asked whether any of the members of the venire "has perhaps a bias in favor or a prejudice against people of Hispanic descent," II Tr. at 59, and when the court asked whether anyone had "ever been involved in a criminal matter, either as a person accused or as a victim or as a witness, . . . in a case involving charges of drug dealing." Id. at 46. In such a situation, under the test articulated by the Supreme Court in McDonough Power, a new trial is necessary if Mr. Cerrato-Reyes can "first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." McDonough Power, 464 U.S. at 556. We have held that this test is not satisfied by showing that a juror provided a mistaken, though honest answer, but rather "is directed at intentionally incorrect responses." Gonzales, 99 F.3d at 984.

The district court held that Mr. Cerrato-Reyes was unable to meet either part of the McDonough Power test regarding the juror's answers to the voir dire questions about racial prejudice or involvement in a criminal matter. The court

- 6 -

noted that, when questioned in chambers, the juror "stated several times that she had no such prejudice and that her experience with Hispanics while on a mission had been largely favorable," Aplt. Brief app. 2 at 3, and concluded that she answered the question about prejudice against Hispanics honestly and correctly. The court then went on to consider the juror's failure to disclose her encounter with drug dealers in Texas. With respect to the first part of the McDonough Power test, the court found that, although the juror arguably should have provided this information, her failure to do so was at most a good faith mistake. Although unnecessary, the court also looked at the second part of the test and concluded that Mr. Cerrato-Reyes failed to demonstrate that the information would have provided a basis for a challenge for cause. The court reached this conclusion by noting the dissimilarities between the incident in Texas and the circumstances of the offense for which Mr. Cerrato-Reyes was being tried.

The question of the juror's honesty during voir dire and in chambers is a factual determination which we review for clear error, see Gonzales, 99 F.3d at 985, noting that "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985). Having reviewed the record, we cannot say that the district court clearly erred in finding that the juror either answered the voir dire questions honestly or made a

good faith mistake. Her repeated assertions that she was not prejudiced against Hispanics lend weight to this finding, and unlike the district judge, we were not present to observe her demeanor and tone of voice. We do not agree with Mr. Cerrato-Reyes that the juror's statement that she tried not to have prejudice was a tacit concession that she was in fact prejudiced. Although the statement could be so read, it could also indicate that the juror was conscientious about her duties and the need to avoid any type of prejudice. The record also provides support for the district court's finding that the juror's failure to disclose her encounter with drug dealers was not intentional, but rather due to a good faith mistake.

## 2. Actual or Implied Bias

In addition to the McDonough Power test, which merely looks at the juror's honesty during voir dire, Mr. Cerrato-Reyes asserts that he did not have the benefit of an impartial jury because, whether the juror answered the questions honestly or not, she was either actually or impliedly biased against Hispanics or drug dealers, or both. See Gonzales, 99 F.3d at 985-86. The district court found that the juror had no actual or implied bias against Mr. Cerrato-Reyes. We review the court's finding as to actual bias for clear error and the court's finding as to implied bias de novo. See id. at 986.

a. Actual Bias

To support his contention that the juror was actually biased against him, Mr. Cerrato-Reyes points to the juror's statements regarding Hispanics and drug dealers. "Actual bias can be shown by the express admission of the juror [] . . . of a state of mind prejudicial to a party's interest," Skaggs v. Otis Elevator Co., 164 F.3d 511, 516-17 (10th Cir. 1998) (internal quotation and citation omitted), or it can be found by the court based upon the juror's voir dire answers. See United States v. Torres, 128 F.3d 38, 43 (2d Cir. 1997), cert. denied, 118 S. Ct. 1399 (1998).

In Torres, the Second Circuit found that the trial court did not abuse its discretion in concluding that two jurors were actually biased. These jurors expressly stated that, because of their personal experiences with drug dealers, they would not be able to believe a drug dealer's testimony. See id. at 44-45. In the case at bar, the juror in controversy made no such express admission of bias against either Hispanics or drug dealers. Although Mr. Cerrato-Reyes views the juror's statement that she tries not to be prejudiced as a tacit admission, this does not rise to the level of an express admission of bias. In fact, the juror expressly denied having a bias and stated that her experiences made her more open-minded toward Mr. Cerrato-Reyes' possible innocence.

In evaluating the district court's conclusion that the juror was not biased,

we bear in mind that a finding of actual bias "is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province," Wainwright v. Witt, 469 U.S. 412, 428 (1985), and "an appellate court [cannot] easily second-guess the conclusions of the decision-maker who heard and observed the witness[]." Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981). Given this standard of review, we hold that the court did not commit clear error in finding that the juror was not actually biased.

We are troubled by the disturbing cultural stereotypes, albeit couched in ambiguity, that the juror expressed, and on de novo review we might have come to a different conclusion than the district court. It is clear that the juror held strong opinions about her neighbors, both Hispanic and Caucasian, and about drug dealers. However, Mr. Cerrato-Reyes seems to ask us to automatically discredit a trial court's findings once a juror expresses such opinions. Under the clearly erroneous standard of review, we cannot do so if there is a basis for those findings. Here, the juror's repeated denials of prejudice provides such a basis, and the trial judge was uniquely situated to evaluate her credibility.


b. Implied Bias

We now look at Mr. Cerrato-Reyes' assertion that the juror was impliedly biased against him. A finding of implied bias is a legal determination that "turns

on an objective evaluation of the challenged juror's experiences and their relation to the case being tried." Gonzales , 99 F.3d at 987. Unlike the inquiry for actual bias, in which we examine the juror's answers on voir dire for evidence that she was in fact partial, "the issue for implied bias is whether an average person in the position of the juror in controversy would be prejudiced." Torres , 128 F.3d at 45. A finding of implied bias is appropriate when the juror, although she believes that she can be impartial, is so closely connected to the circumstances at issue in the trial that bias is presumed. See Gonzales , 99 F.3d at 987. The implied bias doctrine is not to be lightly invoked, but "must be reserved for those extreme and exceptional circumstances that leave serious question whether the trial court subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice." Id. (quotations and citation omitted). When the court finds that a juror is impliedly biased, disqualification is mandatory. See Torres , 128 F.3d at 45.

Implied bias may be demonstrated by showing that "'the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.'" Gonzales , 99 F.3d at 987 (quoting Smith v. Phillips , 455 U.S. 209, 222 (1982) (O'Connor, J., concurring)). It can also be found when there are similarities between the juror's experiences

- 11 -

and the facts at issue in the trial.    See id.  Thus, we presumed bias in   Burton v. Johnson , 948 F.2d 1150, 1158-59 (10th Cir. 1991), where the defense in a murder trial was battered-wife syndrome and a juror was herself the victim of ongoing domestic abuse.

However, the exceptional nature of this doctrine is evident when examining cases in which implied bias is not found.  For example, after the defendant in Gonzales was convicted of criminal sexual penetration, he discovered that one of the jurors had been raped twenty-five years earlier and had briefly discussed her experience during deliberations.  Although we agreed that there were superficial similarities between the juror's experience and the incident giving rise to the trial, we noted the amount of time that had passed and the juror's testimony that the rape had little impact on her life, and held that they did not render the juror biased as a matter of law.   See Gonzales , 99 F.3d at 990-91. We have also declined to presume bias when jurors were personally acquainted with government witnesses, see United States v. Bradshaw  , 787 F.2d 1385, 1390 (10th Cir. 1986), and when a juror's employment was closely related to the substance of the case.       See Williams v. United States  , 418 F.2d 372, 376-77 (10th Cir. 1969). Other circuits have refused to find implied bias when a social worker juror in a rape prosecution had counseled another rape victim for eighteen months and testified on her behalf, see Tinsley v. Borg  , 895 F.2d 520, 529 (9th Cir. 1990), when a juror

unintentionally failed to disclose that she was related to a police officer, United States v. Howard, 752 F.2d 220, 223-25, aff'd on rehearing, 770 F.2d 57 (6th Cir. 1985) (en banc), when a juror in a rape prosecution stated during sentencing deliberations that he had little sympathy for rapists because his granddaughter had been molested, see Fitzgerald v. Greene, 150 F.3d 357, 362, 365 (4th Cir.), cert. denied, 119 S. Ct. 389 (1998), and when a juror in a money laundering case admitted that she had at one time engaged in similar "structured" deposits as those at issue in the trial. See Torres, 128 F.3d at 42, 46.

Given this case law, it is clear that the experiences of the juror in controversy here do not support a finding of implied bias. The facts that Mr. Cerrato-Reyes relies upon — that she lived in a Hispanic neighborhood and was fearful because of a prior experience with non-Hispanic drug dealers — do not demonstrate the kind of similarity to the issues at trial that was present in Burton. In addition, Mr. Cerrato-Reyes has not alleged any other facts which demonstrate that the juror was closely related to the facts at issue in the trial. We therefore hold that the juror was not impliedly biased against Mr. Cerrato-Reyes.

B. Entrapment Instruction

Mr. Cerrato-Reyes also challenges the entrapment instruction given by the district court because it failed to clearly state that the government carried the

burden of disproving entrapment. Although the court agreed to give an entrapment instruction, it declined Mr. Cerrato-Reyes' request to include the absence of entrapment as an element of the offense. The instruction that the court gave stated in relevant part:

> In order to return a verdict of guilty as to Defendant Cerrato-Reyes for the crime of possessing with intent to distribute a controlled substance, you must find beyond a reasonable doubt that the Defendant was not entrapped.

IV Tr. at 91. Mr. Cerrato-Reyes contends that the court erred by refusing to include this instruction as an element of the offense, or failing that, by not clearly stating that the government carried the burden. We disagree.

We review the district court's decision to give a particular jury instruction for abuse of discretion and consider the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law. See Gust v. Jones, 162 F.3d 587, 596 (10th Cir. 1998). Although we recognize that "[a] defendant is entitled to an instruction on his theory of the case if the instruction is a correct statement of the law and if he has offered sufficient evidence for the jury to find in his favor," United States v. McIntosh, 124 F.3d 1330, 1337 (10th Cir. 1997), "[i]t is not error to refuse to give a requested instruction if the same subject matter is adequately covered in the general instructions." United States v. Alonso, 790 F.2d 1489, 1496 (10th Cir. 1986) (quoting United States v. Miller, 460 F.2d 582, 588 (10th Cir. 1972)).

- 14 -

We have considered an instruction similar to the one given in this case numerous times.   See United States v. Martinez   , 776 F.2d 1481, 1484 (10th Cir. 1985);  United States v. Smegal   , 772 F.2d 659, 660 (10th Cir. 1985);     United States v. Martinez , 749 F.2d 601, 605-06 (10th Cir. 1984);     United States v. Gurule   , 522 F.2d 20, 25 (10th Cir. 1975).  In each case we acknowledged our preference for an instruction which clearly stated that the government carried the burden of proving no entrapment.  However, in view of the instructions as a whole, we held in each case that the jury was not misled.  As in those cases, Mr. Cerrato-Reyes' jury was instructed that it was required to find beyond a reasonable doubt that he was not entrapped, and, in other instructions, the jury was repeatedly told that the government had the burden of proof beyond a reasonable doubt.  There was no indication that the burden of proof beyond a reasonable doubt ever shifts to the defendant.  Thus, taking the entrapment instruction in the context of all the instructions, we conclude that the jury was not misled.

In so doing, we decline to require the government to prove the absence of entrapment as an element of the offense.  We acknowledge that in      United States v. Duran , 133 F.3d 1324 (10th Cir. 1998), we stated that "when a defendant has presented sufficient evidence to raise the issue of entrapment for the jury, proof that the defendant was not entrapped effectively becomes an element of the crime."  Id. at 1331 (footnote omitted).  However, this statement does not impose

- 15 -

a requirement that absence of entrapment be listed among the elements of the offense. In Duran, we found that an entrapment instruction which failed to identify both the standard of proof and who carried the burden of proof was plain error. See id. at 1333. We noted that the instructions in Smegal, Martinez, and Gurule, although less than ideal for failing to explicitly state that the government carried the burden of proving no entrapment, were permissible because they clearly stated that the jury could not convict unless it found beyond a reasonable doubt that there is no entrapment. See id. Therefore, there was no error in the instructions given by the court in Mr. Cerrato-Reyes' case.

However, we reiterate that it would have been preferable for the trial court to have clearly and explicitly stated that the government carried the burden of proving no entrapment. The instructions given by the court easily could have been modified as follows:

> In order to return a verdict of guilty as to Defendant Cerrato-Reyes for the crime of possessing with intent to distribute a controlled substance, you must find that the government has proven beyond a reasonable doubt that the Defendant was not entrapped.

Such a modification would remove any doubts as to the burden of proof and would spare this court from having to consider this issue again.

## II. Jose Manuel Osuna-Reyes

Mr. Osuna-Reyes' offense level for sentencing was increased by two levels for obstruction of justice pursuant to USSG § 3C1.1. He argues that the district court's enhancement was not warranted, given the fact that the jury in his first trial was unable to reach a verdict. We review the district court's factual findings as to the enhancement under § 3C1.1 for clear error, and review de novo the court's interpretation of the Sentencing Guidelines. See United States v. Hawley, 93 F.3d 682, 686-87 (10th Cir. 1996).

An enhancement under § 3C1.1 is appropriate if the court finds that the defendant has given "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993). If a defendant objects to such an enhancement, the court must review the evidence and make specific findings in order to establish that the defendant's trial testimony constituted perjury which willfully obstructed justice. See id. at 95. However, "[t]he mere fact that a defendant testifies to his or her innocence and is later found guilty by the jury does not automatically warrant a finding of perjury." United States v. Markum, 4 F.3d 891, 897 (10th Cir. 1993). As a result, the district court is required to "indicate what specific testimony it finds to be untrue and how that testimony concerns a material matter designed to substantially affect the outcome of the case." United States v. Arias-Santos, 39 F.3d 1070, 1077

(10th Cir. 1994).

During Mr. Osuna-Reyes' sentencing, the court specifically identified two instances where it found that Mr. Osuna-Reyes willfully made material misstatements under oath. First, contradicting the testimony of a special agent of the FBI, he denied making incriminating statements and signing a waiver form. Second, he stated that he met Dolores Mejia, Jessica Mejia's husband, to receive rent money rather than drug money. It seems clear that the court's specific findings meet the requirements of _Dunnigan_ and _Arias-Santos_, and thus the court did not err in imposing the enhancement under USSG § 3C1.1.

Given the applicable case law and the facts of this case, we find no merit in Mr. Osuna-Reyes' assertions. While a client certainly has the right to file even a frivolous appeal, we suggest that counsel, faced with future similar circumstances where a defendant insists on filing such an appeal, submit an _Anders_ brief, _see Anders v. California_, 386 U.S. 738, 744 (1967), and request an order permitting withdrawal.

## IV.  Jessica Ann Mejia

Pursuant to a plea agreement, Ms. Mejia pled guilty to possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). On appeal she challenges her sentence, asserting that the district court erred in (1) failing to

force the government to make a downward departure motion under USSG § 5K1.1, and (2) concluding that it had no power to enforce the plea agreement.

Ms. Mejia agreed to cooperate with the government and signed a plea agreement with the following provision: "I also understand that if, in the sole discretion of the government, my assistance is found to be substantial, the government will file a motion for downward departure below the guideline range applicable to me, pursuant to the provisions of § 5K1.1 U.S.S.G." 1 R. doc. 88 at 6. She testified on behalf of the government at the joint trial of Mr. Cerrato-Reyes and Mr. Osuna-Reyes, providing testimony that the government characterized as "helpful" and "very credible." 7 R. at 13. However, the jury was unable to reach a verdict in Mr. Osuna-Reyes' case, and his case ended in a mistrial. For some reason, Ms. Mejia was not notified as to the date of Mr. Osuna-Reyes' second trial, [2] and thus did not provide testimony as she had at the first trial. Because she did not testify in the second trial, the government declined to move for a downward departure. Instead, the government recommended sentencing Ms. Mejia at the low end of the guideline range because of her assistance in the first trial.

_____

[2] The reason for the lack of notice is controverted. The government claims that when the trial was rescheduled, Ms. Mejia had absconded from her pretrial supervision and the government was unable to reach her in spite of its "incredible efforts." Ms. Mejia asserts that she was available at all times at her mother's residence.

Section 5K1.1 of the Sentencing Guidelines authorizes a court to depart downward from the guideline range "[u]pon motion of the government stating that the defendant had provided substantial assistance in the investigation or prosecution of another person who has committed an offense." The government's motion is "an unequivocal condition precedent," United States v. Lee, 989 F.2d 377, 379 (10th Cir. 1993), to a downward departure by the district court, limiting the court's authority and giving the government "a power, not a duty, to file a [§ 5K1.1] motion when a defendant has substantially assisted." Wade v. United States, 504 U.S. 181, 185 (1992). A district court can review the government's discretionary refusal to file a substantial assistance motion in only three situations: (1) "if the refusal violates an agreement with the government," Lee, 989 F.2d at 379; (2) if "the refusal was based on an unconstitutional motive [such as] the defendant's race or religion," Wade, 504 U.S. at 185-86; or (3) "in an egregious case . . . where the prosecution stubbornly refuses to file a motion despite overwhelming evidence that the accused's assistance has been so substantial as to cry out for meaningful relief." United States v. Kuntz, 908 F.2d 655, 657 (10th Cir. 1990) (quotation marks and citation omitted).

Ms. Mejia maintains that the government breached its agreement by refusing to move for a downward departure. We review this claim de novo. See United States v. Courtois, 131 F.3d 937, 938 (10th Cir. 1997). "Plea bargains are

governed by contract principles, and if any ambiguities are present, they will be resolved against the drafter, in this case the government." United States v. Massey, 997 F.2d 823, 824 (10th Cir. 1993) (internal quotation marks and citations omitted). We find no basis for interpreting the plea agreement to require the government to make a § 5K1.1 motion. Although the government obligated itself to so move if Ms. Mejia provided substantial assistance, it retained its discretion, in clear and unambiguous language, to determine whether Ms. Mejia's assistance was substantial.

In situations such as we face here, where Ms. Mejia "asserts that the government breached an agreement that leaves discretion to the prosecutor, the district court's role is limited to deciding whether the government made the determination in good faith." Lee, 989 F.2d at 380. The government made its determination based on Ms. Mejia's failure to testify in Mr. Osuna-Reyes' second trial. Given that "[t]he government is in the best position to determine whether a defendant provides assistance substantial enough to warrant filing a [§ 5K1.1] motion," United States v. Perez, 955 F.2d 34, 36 (10th Cir. 1992), and that there are "significant institutional incentives for the prosecution to exercise sound judgment and to act in good faith" when considering whether to make a motion, Kuntz, 908 F.2d at 657 (internal quotation marks and citation omitted), we are not convinced that the government made its determination in bad faith. We also find

no abuse of discretion in the district court's refusal to hold an evidentiary hearing on this issue because Ms. Mejia has not made a "substantial threshold showing" that she provided the requisite assistance. <u>Wade</u>, 504 U.S. at 186; <u>see</u> <u>United States v. Gines</u>, 964 F.2d 972, 979 (10th Cir. 1992).

AFFIRMED.