**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 4 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

LUIS ARMANDO PEREA-VIVAS,
aka Jorge Colon Perez,

     Defendant - Appellant.

No. 98-3234
(D.C. No. 97-40084-01-SAC)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **HENRY** and **LUCERO**, Circuit Judges.


Luis Armando Perea-Vivas pleaded guilty to possession with intent to

distribute cocaine, in violation of 21 U.S.C. § 841. His sentence calculation

included a two-level enhancement for obstruction of justice pursuant to the

United States Sentencing Guidelines ("USSG") § 3C1.1. He appeals this two-

level enhancement, arguing that the evidence did not support its imposition. We

have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, and affirm.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I

In October 1997, Perea-Vivas was a front-seat passenger in a Buick driven by Asceneth Villota-Gomez when the vehicle was stopped for speeding by Kansas Highway trooper B.K. Smith. While running computer checks on Villota-Gomez, Smith elicited from her a statement that she had borrowed the car from "Yolanda" to attend a cousin's wedding, but did not know the location of the wedding and was to meet someone in Kansas City at a convenience store at the corner of 27th and Indiana Streets. [1]

Smith stated that his suspicions were aroused by a strong odor of automobile body repair putty and fresh paint from within the vehicle, an odor he associated, in his experience, with the possibility of a hidden compartment containing drugs. These suspicions were exacerbated by the defendants' nervous behavior and Villota-Gomez's implausible statement of her travel plans.

Smith obtained Villota-Gomez's consent to search the vehicle. Upon his search, he discovered approximately five kilograms of what was eventually determined to be cocaine. Upon Perea-Vivas's arrest, he produced false Texas identification indicating his name was Jorge Colon Perez. The address on this recently-obtained identification card was later determined to be that of Isabel

---

[1] Investigation subsequently discovered no convenience store in the vicinity of the named intersection.

Yolanda Cortez, the owner of the Buick. Perea-Vivas was also found to be in possession of a pager obtained under the name of Isa or Yolanda Galvin, residing at that same address, and receipts for the transfer of approximately $850 to Colombia. Isabel Yolanda Cortez was also later discovered to have posted a $2500 bond for Perea-Vivas's previous arrest on immigration charges.

Perea-Vivas and Villota-Gomez were charged by a grand jury with one count of possession with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) & b(1)(A) and 18 U.S.C. § 2, and one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a), 846 and 18 U.S.C. § 2. At their detention and arraignment hearing, Villota-Gomez pleaded not guilty.

In February of 1998, Perea-Vivas entered a petition to plead guilty to the first count, possession with intent to distribute, in exchange for the government's promise to dismiss the conspiracy count and seek a sentence adjustment for acceptance of responsibility. At his plea hearing, Perea-Vivas pleaded guilty and requested the opportunity to address the court. Through an interpreter, Perea-Vivas stated as follows:

> He says that he took advantage of the young lady, the codefendant, and she's innocent. She knew nothing of that contraband in the car, that she knew absolutely nothing. He, um, he fooled her, I guess you might say. He made a fool of her or fooled her. She wasn't aware that there were drugs in the car, and she knew nothing about it. She's innocent.

-3-

(II R. at 18-19.)

Shortly later that day, the court accepted Villota-Gomez's plea of guilty as to the count of possession with intent to distribute. Neither the court nor the government questioned Villota-Gomez regarding whether Perea-Vivas knew of her knowledge of the contraband.

The presentence report recommended that Perea-Vivas's false assertion of Villota-Gomez's innocence represented a materially false statement to a judge and therefore merited a two-level enhancement for obstruction of justice pursuant to USSG § 3C1.1. Perea-Vivas objected, and the district court heard arguments from both sides regarding the enhancement. With respect to the obstruction of justice enhancement, the district court found the enhancement justified by Perea-Vivas's statement of Villota-Gomez's innocence, noting as follows:

> The court does not accept defendant['s] counsel's reasoning that one didn't know what the other was doing, and the court believes that the obstruction of justice and the information given to the court was false at the time it was given by the defendant to the court during his plea.

(V R. at 18.) The district court proceeded to sentence Perea-Vivas to 97 months imprisonment. Perea-Vivas now appeals the imposition of the obstruction of justice enhancement.

## II

"In reviewing an application of the Guidelines, we will reverse the district court's factual findings only if clearly erroneous. However, we will remand for resentencing if the Guidelines were incorrectly applied." United States v. Bernaugh, 969 F.2d 858, 861 (10th Cir. 1992) (citations and internal quotations omitted).

> USSG § 3C1.1 provides for a two-level sentencing enhancement if
>
> (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense.

USSG § 3C1.1. The Guidelines' "non-exhaustive list of examples" for application of this enhancement includes "providing materially false information to a judge or magistrate." USSG § 3C1.1, comment. (n.4(f)). "Material" information means, for purposes of the obstruction of justice enhancement, "information that, if believed, would tend to influence or affect the issue under determination." USSG § 3C1.1, comment. (n.6). "[T]he section 3C1.1 enhancement applies where a defendant attempts to obstruct justice in a case closely related to his own, such as that of a codefendant." Bernaugh, 969 F.2d at 861; see also USSG § 3C1.1, comment. (n.1(B)(ii)).

The parties apparently agree on the proposition, while differing as to its implications, that in considering the application of an enhancement pursuant to § 3C1.1, the court should evaluate testimony in the light most favorable to the defendant. See United States v. Arias-Santos, 39 F.3d 1070, 1076 (10th Cir. 1994). We note, however, that application note 1 to section 3C1.1 was amended, effective November 1, 1997 (after Perea-Vivas's crime but prior to his sentencing) to eliminate language providing that "testimony or statements should be evaluated in a light most favorable to the defendant." USSG App. C, amend. 566. The application note now provides that "the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." USSG § 3C1.1, comment. (n.2). In determining which version of the Guidelines to apply, we have held:

> Normally, district courts are to apply the sentencing guidelines in effect at the time of sentencing rather than the guidelines in effect on the date of the offense. See 18 U.S.C. § 3553(a)(4) & (5). But the ex post facto clause prohibits retroactive application of a changed guideline if the change disadvantages the defendant. See Miller v. Florida, 482 U.S. 423, 430, 433 (1987). See also United States v. Smith, 930 F.2d 1450, 1452 n. 3 (10th Cir. 1991).

United States v. Underwood, 938 F.2d 1086, 1090 (10th Cir. 1991). We need not

resolve whether the amendment at issue implicates ex post facto issues because our result remains the same under either version of the application note.

We consider whether the district court's factual findings were clearly erroneous, or its application of USSG § 3C1.1 incorrect, with respect to the necessary elements of this obstruction enhancement: falsity, materiality, and willfulness. See United States v. Cerrato-Reyes, 176 F.3d 1253, 1263 (10th Cir. 1999).

## A. Falsity

The falsity of Perea-Vivas's statements is evident. Shortly after he asserted Villota-Gomez's innocence and ignorance of the contraband, she entered a plea of guilty to a charge of possession with intent to distribute. This offense necessarily incorporated an element of scienter, therefore refuting Perea-Vivas's assertion of his co-defendant's ignorance. Perea-Vivas's claim that his statement was not a statement of fact but merely a subjectively true statement of his own lack of knowledge of Villota-Gomez's involvement is belied by his affirmative statement to the court that he "made a fool of" or "fooled" his co-defendant. Therefore, the element of falsity is clearly established.

## B. Materiality

We agree with Perea-Vivas that a false statement regarding a co-defendant's innocence, like a false statement regarding a defendant's own

innocence, "does not automatically warrant" an obstruction of justice enhancement. Cerrato-Reyes, 176 F.3d at 1263 (quoting United States v. Markum, 4 F.3d 891, 897 (10th Cir. 1993)). Such a false statement must additionally concern "a material matter designed to substantially affect the outcome of the case." Cerrato-Reyes, 176 F.3d at 1263 (quoting Arias-Santos, 39 F.3d at 1077). "Whether the particular facts of a case show that the misinformation offered by the defendant was sufficient to significantly impede an investigation is a question of fact to be determined by the sentencing court." United States v. Flores-Flores, 5 F.3d 1365, 1368 (10th Cir. 1993) (citing United States v. Easterling, 921 F.2d 1073, 1077 (10th Cir. 1990)).[2] Although it is unlikely, given the timing of Perea-Vivas's statement, that the government or the court would have believed his assertions of Villota-Gomez's innocence, the futility of his attempt at obstruction does not defeat the materiality of the misinformation offered. See Flores-Flores, 5 F.3d at 1368 (holding that "[m]ateriality in the context of false information is not determined by whether the authorities somehow manage to ferret out accurate information prior to a defendant's first court appearance").

_____

   [2] Since the same judge sentenced both Perea-Vivas and Villota-Gomez, that judge would seem uniquely qualified to make the factual assessment of whether Perea-Vivas's statement, if believed, would "tend to influence or affect the issue under determination." USSG § 3C1.1, comment. (n.6); see also Flores-Flores, 5 F.3d at 1368.

Nor does the generality of Perea-Vivas's statements render clearly erroneous the district court's factual finding of materiality. We have held that "to sustain a USSG § 3C1.1 enhancement, a defendant need not provide a story that when believed, would fully exculpate his or her codefendant. Rather, it is enough that a defendant provides false information bearing on the extent of the codefendant's criminal liability." United States v. Shumway, 112 F.3d 1413, 1426 (10th Cir. 1997) (citing Bernaugh, 969 F.2d at 862). As in Bernaugh, 969 F.2d at 862, "[i]n order to avoid making incriminating statements as to the roles of his codefendants, [the defendant], while testifying under oath, chose to provide false information to the court . . . partly in hope that if he were believed his codefendants would avoid criminal punishment." The fact that such hope was ephemeral does not defeat findings of materiality and intent. See id.

While the false statements at issue in Shumway and Bernaugh were arguably more detailed and extensive than those before us in this case, the level of detail is not solely determinative of whether information would, "if believed, . . . tend to influence or affect the issue under determination." USSG § 3C1.1, comment. (n.6). Under Shumway and Bernaugh, therefore, there is no clear error in the district court's finding of materiality.

**C. Intent**

An enhancement under § 3C1.1 requires willful intent to mislead.  See

Cerrato-Reyes, 176 F.3d at 1263; Flores-Flores, 5 F.3d at 1368 n.5.  The

government must demonstrate "that the defendant consciously acted with the

purpose to obstruct justice."  United States v. Hernandez, 967 F.2d 456, 459 (10th

Cir. 1992) (citing United States v. Gardiner, 931 F.2d 33, 35 (10th Cir. 1991)).

"[C]entral to the willfulness inquiry '[is] the defendant's knowledge of the

requirements placed upon him by the court and his conscious decision to ignore

its mandate.'"  United States v. Taylor, 997 F.2d 1551, 1560 (10th Cir. 1993)

(quoting United States v. Monroe, 990 F.2d 1370, 1376 (D.C. Cir. 1993)).  Thus,

there must be "the willful intent to provide false testimony, rather than as a result

of confusion, mistake, or faulty memory" to sustain the enhancement.  United

States v. Dunnigan, 507 U.S. 87, 94 (1993); see Arias-Santos, 39 F.3d at 1076-77.

Perea-Vivas's principal argument regarding lack of intent proceeds as

follows: Villota-Gomez's guilty plea indicates that she knew of the drugs, but

does not prove that Perea-Vivas knew that she knew.  Therefore, while Perea-

Vivas's statement was false, there is no proof it was intentionally false, as he

might have (wrongly) believed it true, and there is nothing but inference to impute

to him knowledge of her knowledge.

While it is true that the knowledge and therefore requisite intent are only

imputed to Perea-Vivas by inference, the inferences mustered by the government

are sufficiently strong to uphold against clear error review the conclusion that he knew that Villota-Gomez was involved in smuggling the drugs. First, Perea-Vivas apparently spoke little English and had been in the country only a short time, and therefore the government suggests it was unlikely that anyone would entrust him alone with over a million dollars in cocaine. Second, only Villota-Gomez had the directions and pager number to meet their delivery contact in Kansas city. The fact that she had this information, and made false and vague statements regarding their destination, strongly suggests that she was not, as Perea-Vivas asserts, merely his dupe. For he did more than simply profess ignorance of her involvement; he affirmatively testified that he had fooled her into participating.

While the government or the court might have obtained additional evidence of Perea-Vivas's knowledge of Villota-Gomez's involvement through further questioning of Villota-Gomez, the government's burden of demonstrating grounds for an enhancement does not require all potentially available evidence, only a preponderance of the evidence.[3] <u>See, e.g.</u>, <u>United States v. Pelliere</u>, 57

---

[3] Perea-Vivas also relies on the fact that in <u>Bernaugh</u>, the co-defendants were prepared to go to trial, whereas Villota-Gomez was already prepared to plead guilty. This distinction does not defeat the finding of willful intent. While it appears obvious that the court had ample reason not to believe appellant's assertions of Villota-Gomez's ignorance, the focus in assessing imposition of a § 3C1.1 enhancement is on the purpose and possible effect of his statements, not their actual effect. <u>See, e.g.</u>, <u>Flores-Flores</u>, 5 F.3d at 1368; <u>Bernaugh</u>, 969 F.2d

F.3d 936, 938 (10th Cir. 1995). The evidence in this case is sufficient to sustain against clear error review the district court's conclusion that the government's burden was met with respect to the element of willfulness. Therefore, we defer to the district court's finding that Perea-Vivas willfully and intentionally provided false information to the court regarding Villota-Gomez's role in the crime. See Bernaugh, 969 F.2d at 861-62.

## III

Perea-Vivas's sentence is **AFFIRMED**.[4]

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge

_____

at 862.

[4] The government's motion to supplement the record is granted.