**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 5 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOHN RORY GONZALES,

      Defendant-Appellant.

No. 99-4013
(D.C. No. 98-CR-392-G)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR,** Chief Judge, **EBEL** and **BRISCOE**, Circuit Judges.

---

Defendant-Appellant John Rory Gonzales ("Gonzales") appeals his conviction and sentence for armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). Gonzales argues that the district court erred (1) on remand when it dismissed the indictment without prejudice and (2) when it denied a motion for

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

a new trial because a juror was impliedly bias. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I. Background

On December 19, 1994, the Mountain America Credit Union ("MACU") of West Jordan, Utah, was robbed by two armed men wearing masks. The two men brandished a weapon and ordered everyone in the bank on the floor. The defendant and his accomplice then vaulted into the teller's stations and began opening teller drawers, removing money from the drawers and from the counter top behind the cashier window. The total amount of money taken from the bank amounted to $14,790.

On February 2, 1995, Gonzales was indicted for the robbery of the MACU. The indictment was dismissed without prejudice on February 14, 1995. The government learned that Gonzales was attempting to purchase an alibi through an FBI sting operation. Because the FBI did not want to be forced to reveal their sting operation immediately, the government dismissed the indictment. Gonzales was reindicted on November 30, 1995, but did not make his initial appearance until May 21, 1996. On May 22, 1996, a trial date was scheduled for July 15, 1996. On July 2, 1996, the court changed the date of trial to July 22, 1996 or July 25, 1996, if another criminal case proceeded to trial. Then on July 15, 1996, the

parties learned that the other criminal case would proceed to trial and that Gonzales's trial would be postponed until July 25, 1996.

When the United States contacted its witnesses regarding the change of trial dates, it learned that certain essential witnesses would be out of town through the new scheduled trial date. The court then held a hearing on July 15, 1996 to allow the United States to make an oral motion for a continuance based on the unavailability of the essential witnesses. The court initially suggested August, 5, 1996, as a date available for trial. The United States attorney indicated that he was scheduled to be out of town during the last three days of the prior week on a family vacation which involved a non-refundable deposit on lodging. In addition, one essential witness, Eddie Vigil, was going to be unavailable until August 3, 1996 which fell over a weekend, thus an August 5th trial date would deprive the United States Attorney of preparation with this witness. The attorney further indicated to the court that he was unavailable the week of August 12, 1996, as a result of mandatory training in Washington, D.C. The court then suggested the week of August 19, 1996, but the United States attorney requested one week preparation time prior to trial. The trial was then continued until August 26, 1996. At the hearing, Gonzales raised a Speedy Trial objection to the continuance of the trial date. The court found that the time between August 12 and August 26 was excludable under the Speedy Trial Act because the interest of justice

outweighed the interest of the public and the defendant in a speedy trial. Gonzales was then tried on August 26-28, 1996 and was convicted by jury verdict on August 28, 1996.

Gonzales filed an appeal, arguing that the indictment should be dismissed for a Speedy Trial Act violation. This court determined that there had been a fourteen-day violation of the Speedy Trial Act and reversed Gonzales' conviction. See United States v. Gonzales, 137 F.3d 1431 (10th Cir. 1998). We then remanded the case to the district court to determine whether the dismissal should be with or without prejudice. By order dated July 21, 1998, the indictment was dismissed without prejudice. A complaint was filed against Gonzales on July 21, 1998, with an indictment on July 29, 1998. Trial was held between October 6 and 9, 1998, and Gonzalez was found guilty by a jury on October 9, 1998.

After trial, the government learned and disclosed to the defense that one of the jurors, Ana Marie Burell, had a daughter-in-law who was employed at the time of the trial at the same branch of MACU that had been robbed, although she was not so employed when the robbery took place. This fact was not disclosed during the voir dire proceedings at trial; however, no direct question was requested by Gonzales or put to the jury or to Ms. Burell concerning a relationship with employees at the credit union. The transcript of the voir dire

proceedings reflects that the court asked members of the jury panel the following question:

> Do any of you have any doubt that you would be able to judge this case and make your determination and render a verdict only and solely upon the basis of evidence presented in open court? If you have any doubt about that, don't feel that you could do it, raise your hand.

Following the question, one juror raised her hand and disclosed that she had been a bank teller about fifteen years earlier and would have a difficult time judging the case on the evidence because of that experience. No follow-up questions were asked.

## II. Speedy Trial Act Violation

When determining whether an indictment should be dismissed with or without prejudice for a violation of the Speedy Trial Act, a district court must look to the following factors listed in 18 U.S.C. § 3162(a)(1): "the seriousness of offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." Additionally, the Supreme Court has clarified that prejudice to the defendant is relevant to the district court's consideration. United States v. Taylor, 487 U.S. 326, 334 (1988). We will reverse a district court's determination only for an abuse of discretion. United States v. Saltzman, 984 F.2d 1087, 1092 (10th Cir. 1993).

> Because Congress has declared that a decision will be governed by consideration of particular factors, appellate review is limited to ascertaining whether a district court has ignored or slighted a factor that Congress has deemed pertinent to the choice of remedy. . . . It is imperative for the district court, however, to carefully consider those factors as applied to the particular case and . . . clearly articulate their effect.

Id. (internal citations and quotations omitted). Following briefing by both parties and oral arguments in the district court, the court entered a written order dismissing the indictment without prejudice. In its order, the district court carefully considered each of the factors listed in § 3162(a)(1) and found that they weighed in favor of dismissing without prejudice. Gonzales argues on appeal that although the offense was serious, the other statutory factors weigh against the district court's conclusion. He contends that the noncompliance with the Speedy Trial Act was caused by the government's and the court's conduct and that dismissal with prejudice would have sent a stronger message for the violation and thereby promoted the administration of the Act.

We have carefully reviewed the parties' materials, the district court's order, and the record on appeal. We find no abuse of discretion on the part of the district court, and affirm its judgment to dismiss the indictment without prejudice for substantially the same reasons as those set forth in the district court's thorough and well-written order filed on July 21, 1998.

**III. Implied Bias**

Gonzales next argues that the district court erred in denying his motion for a new trial based on the implied bias of Juror Burell, whose daughter-in-law worked at the MACU, at the time of trial but not at the time of the crime.[1] We review a denial of a motion for a new trial for an abuse of discretion. United States v. Hughes, 191 F.3d 1317, 1321 (10th Cir. 1999). However, we review a finding of implied bias de novo. See United States v. Cerrato-Reyes, 176 F.3d 1253, 1260 (10th Cir. 1999) "A finding of implied bias is a legal determination that turns on an objective evaluation of the challenged juror's experiences and their relation to the case being tried." Id. at 1260 (internal quotations omitted).

A finding of implied bias turns on whether "an average person in the position of the juror in controversy would be prejudiced." Id. at 1260-61 (internal quotations omitted). The implied bias doctrine, however, "should not be invoked lightly. It must be reserved for those 'extreme' and 'exceptional' circumstances that 'leav[e] serious question whether the trial court . . . subjected the defendant

---

[1] Gonzales does not challenge on appeal the district court's determination that Juror Burell did not fail to answer honestly a material question during voir dire under the test set forth in McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548 (1984). McDonough held that to obtain a new trial when a juror gives a mistaken response or fails to respond to a question on voir dire, a party must demonstrate that "a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." Id. at 556. Additionally, Gonzales does not argue actual bias before this court.

to manifestly unjust procedures resulting in a miscarriage of justice.'" Gonzales v. Thomas, 99 F.3d 978, 987 (10th Cir. 1996) (quoting Smith v. Phillips, 455 U.S. 209, 222 & n.* (1982) (O'Connor J., concurring)).

We have stated that implied bias can be demonstrated by showing that "'the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.'" Cerrato-Reyes, 176 F.3d at 1261 (quoting Gonzales, 99 F.3d at 987 (further internal quotations omitted)). We have also found implied bias when there are factual similarities between a juror's experience and the factual issue at trial. See Cerrato-Reyes, 176 F.3d at 1261. None of these circumstances exist in the present case. Although Juror Burell's daughter-in-law worked at MACU at the time of trial, she did not work at the bank when the crime occurred and is not involved in the criminal transaction in any way. There is no reason to believe that this circumstance standing alone would cause Juror Burell to be biased. Having a relative who works at a bank where a crime took place at some earlier time is not so "extreme" or "exceptional" that it would cause us to question whether the trial was manifestly unjust. We therefore conclude that we cannot presume as a matter of law Juror Burell was a biased juror in Gonzales' trial. Thus, the court did not abuse its discretion in denying the motion for a new trial.

For the foregoing reasons, we AFFIRM Gonzales' conviction and sentence.

The mandate shall issue forthwith.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge