**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | |
| v. | No. 04-3375 |
| CLYDE APPERSON, | (D.C. No. 00-40104-01-RDR) |
| Defendant-Appellant. | (D. Kan.) |
| | |
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | |
| v. | No. 04-3376 |
| WILLIAM LEONARD PICKARD, | (D.C. No. 00-40104-02-RDR) |
| Defendant-Appellant. | (D. Kan.) |

**ORDER AND JUDGMENT** [*]

_____

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **BRISCOE, ANDERSON,** and **MURPHY** , Circuit Judges.

Defendants Clyde Apperson and William Pickard, convicted of and sentenced for trafficking in lysergic acid diethylamide (LSD), appeal from the district court's order denying their joint motion for new trial based upon alleged juror misconduct. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I.

Defendants Apperson and Pickard were indicted on charges of conspiring to manufacture, distribute and dispense 10 grams or more of LSD in violation of 21 U.S.C. § 846, and possession with intent to distribute 10 grams or more of LSD in violation of 21 U.S.C. § 841(a)(1). The cases proceeded to trial on January 13, 2003. During the first day of jury selection, the district court swore in the entire jury pool and instructed all potential jurors to listen to the questions posed to those jurors who were called forward to the jury box. The district court then called twelve potential jurors to the jury box, briefly outlined the nature of the case and the pending charges against Apperson and Pickard, and asked them: "[D]o you know any of the attorneys for the government or any of the attorneys who are appearing here or the defendants or any of the other prospective case agents who are here, are you acquainted with any of those people?" ROA, Vol.

58, at 14. Later on the first day of jury selection, the lead prosecutor, Assistant United States Attorney Greg Hough, asked one juror whether she had "a master's or advanced degree?" Id. at 48. On the morning of the second day of jury selection, Mr. Hough asked another juror whether he or any member of his family "had any legal training or . . . exposure to the law, other than the time that [he'd] previously sat on a jury?" Id., Vol. 59, at 219.

Juror Scott Lowry was called to sit in the jury box shortly after lunch on the second day of jury selection. Mr. Lowry indicated, pursuant to questioning by the district court, that he was a bank examiner employed by the Office of the State Bank Commissioner and was responsible for ensuring that state chartered banking institutions followed applicable state rules and regulations. Id. at 293. Mr. Lowry also acknowledged, in apparently less than an enthusiastic manner, that he could "give [the court and parties] the time necessary . . . to serve on th[e] jury . . . ." Id. at 294. The district court turned the questioning over to Mr. Hough, who proceeded to ask Mr. Lowry the following "catch-all" question:

> Q. (by Hough): Now, sir, the questions that have been asked today and yesterday, did you hear the questions that I have asked and the two defense attorneys have asked?
> A: Yes.
> Q: Any of those that would have caused you to give an answer that would require any explanation?
> A: No.

Id. at 295. Mr. Hough also asked Mr. Lowry whether he "[w]ould . . . have any

3

problem as a juror giving the parties a fair trial?" Id. at 297. Mr. Lowry responded "No." Id. Under subsequent questioning by defendant Apperson's counsel, Mr. Lowry indicated he "would not" have "any hesitancy in returning a verdict of not guilty" if the government "failed to prove its case in every element of each of the charges beyond a reasonable doubt . . . ." Id. at 302. When questioned by defendant Pickard's counsel, Mr. Lowry stated he was not related to an individual named Stuart Lowry who lived in or near Valley Falls, Kansas. Id. at 303. Mr. Lowry also stated, in response to questioning by defendant Pickard's counsel, that there was nothing he'd heard during the course of the jury selection that "would affect [his] ability to remain fair and impartial throughout th[e] entire proceeding . . . ." Id. at 304. At the conclusion of this questioning, Mr. Lowry was passed for cause by all three attorneys. Mr. Lowry ultimately served as the foreperson of the jury and, along with his fellow jurors, found defendants Apperson and Pickard guilty as charged.

In May 2004, approximately six months after he was sentenced, defendant Pickard read an article in which Mr. Lowry was identified as having graduated from law school. That led to Pickard and Apperson filing with the district court a joint motion for new trial based upon newly discovered evidence of alleged juror misconduct. In support of their motion, defendants offered evidence that Mr. Lowry had attended Washburn Law School, graduated with a law degree in

4

December 1987, and was admitted to the Kansas bar in September 1997. Defendants also offered evidence that Mr. Lowry shared an address during law school with an individual named Kirk Lowry, and attended law school at the same time as a Valley Falls resident named Stuart Scott Lowry. Lastly, defendants presented evidence indicating that Mr. Lowry attended Washburn Law School at the same time as, but was not in a graduating class with, Mr. Hough (who graduated from Washburn Law School in 1986), Eric Melgren (the United States Attorney for the District of Kansas, who attended Washburn Law School during 1984-85), and Thomas Luedke (another Assistant United States Attorney in the District of Kansas, who graduated from Washburn Law School in 1986). In its response, the government included a certification from Mr. Hough that he did not know Mr. Lowry and was not aware that Mr. Lowry had attended Washburn Law School.

The district court denied defendants' motion for new trial. In doing so, the district court concluded that defendants had "failed to demonstrate that Mr. Lowry intentionally lied in not disclosing an association with Mr. Hough." ROA, Doc. 507, at 10. More specifically, the district court noted that no evidence had been presented "indicat[ing] that Mr. Lowry knew Mr. Hough," and that, instead, defendants had merely "shown that Mr. Lowry and Mr. Hough were in law school at the same time." Id. Such evidence, the district court concluded, was "so

5

flimsy that there [wa]s no need for an additional hearing." Id. As for defendants'
assertion that Mr. Lowry intentionally failed to disclose his legal training, the
district court concluded it was "obviously not certain that Mr. Lowry
'intentionally' withheld any information." Id. at 11. In the district court's view,
"[i]t [wa]s possible that he simply honestly did not remember the prior question
on legal training," particularly since "it was only asked once" prior to him being
called to the jury box. Id. The district court further concluded that, even
"assum[ing] that Mr. Lowry intentionally failed to disclose this information," it
would not have provided defendants with a basis for challenging him for cause,
particularly since he indicated to both the court and defense counsel that he could
act impartially as a juror. Id. Lastly, the district court concluded the other
"evidence" presented by defendants (e.g., Mr. Lowry's having resided with a Kirk
Lowry during law school) bore no significance. Id. at 12, n.2.

## II.

Defendants claim the district court erred in denying their motion and in
refusing to grant them an evidentiary hearing. We review for abuse of discretion
a district court's denial of a motion for new trial based upon alleged juror
misconduct or juror bias. See United States v. Cerrato-Reyes, 176 F.3d 1253,
1258 (10th Cir. 1999). Likewise, we review for abuse of discretion a district
court's decision as to "[h]ow and whether to have a hearing on a claim" of juror

6

misconduct or bias.  United States v. Humphrey, 208 F.3d 1190, 1198 (10th Cir. 2000).

"Under the Sixth Amendment to the U.S. Constitution, an accused has a right to trial by an impartial jury."  Cerrato-Reyes, 176 F.3d at 1259.  "Though no trial can be perfect, . . . '[o]ne touchstone of a fair trial is an impartial trier of fact – a jury capable and willing to decide the case solely on the evidence before it.'"  Id. (quoting McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984)).  As the Supreme Court has indicated, "[v]oir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors."  McDonough Power, 464 U.S. at 554.  Thus, "[t]he necessity of truthful answers . . . is obvious."  Id.

Where, as here, a party seeks a new trial on the grounds that a juror concealed information during voir dire questioning, they "must first demonstrate that [the] juror failed to answer honestly a material question on voir dire."  Id. at 556; see Cerrato-Reyes, 176 F.3d at 1259 (emphasizing that this part of the McDonough Power test "is directed at intentionally incorrect," rather than mistaken, responses).  Second, they must "show that a correct response would have provided a valid basis for a challenge for cause."  464 U.S. at 556.  As the Supreme Court emphasized in McDonough Power, "[t]he motives for concealing information may vary, but only those reasons that affect a juror's impartiality can

7

truly be said to affect the fairness of a trial." Id.

After reviewing the record on appeal, we conclude that, even assuming for purposes of argument that defendants Apperson and Pickard could satisfy the first prong of the test outlined in McDonough Power, they cannot satisfy the second prong of that test. Had Mr. Lowry disclosed, in response to the catch-all question posed by Mr. Hough, that he attended law school at the same time as Mr. Hough and other members of the United States Attorney's office, graduated from law school, and became a licensed attorney in the State of Kansas, these facts would not have supported striking him for cause. More specifically, these facts would not have established bias on Mr. Lowry's part and thus would not have justified a challenge for cause. See generally Skaggs v. Otis Elevator Co., 164 F.3d 511, 515-16 (10th Cir. 1998) (discussing and applying the second prong of the McDonough test).

We further conclude the district court acted well within its discretion in declining to conduct an evidentiary hearing in connection with defendants' motion. Generally speaking, a district court has the option of conducting an evidentiary hearing when a claim of juror misconduct or bias is asserted. See McDonough, 464 U.S. at 556-57 ("it remains within a trial court's option . . . to order a post-trial hearing at which the movant has the opportunity to demonstrate actual bias or, in exceptional circumstances, that the facts are such that bias is to

be inferred") (Blackmun, J., concurring); <u>United States v. Scull</u>, 321 F.3d 1270, 1278 (10th Cir. 2003) (noting that a district court has broad discretion in deciding how to handle allegations of juror bias).  For substantially the reasons already discussed, we conclude the evidence presented by defendants in connection with their motion was insufficient to trigger an obligation on the part of the district court to conduct an evidentiary hearing.

AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge