**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Colette Joe BERNAUGH,**
**Defendant–Appellant.**

**No. 91–6127.**

United States Court of Appeals,
Tenth Circuit.

June 24, 1992.

M. Jay Farber, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty., with him on the briefs), Oklahoma City, Okl., for plaintiff-appellee.

Charles Louis Roberts, El Paso, Tex., for defendant-appellant.

Before ANDERSON, ALDISERT,* and TACHA, Circuit Judges.

* The Honorable Ruggero J. Aldisert, Senior Judge, United States Court of Appeals, Third Circuit, sitting by designation.

STEPHEN H. ANDERSON, Circuit Judge.

Colette Joe Bernaugh ("Bernaugh") appeals from the sentence entered by the district court pursuant to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") after he pled guilty to possession of approximately 300 pounds of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), to conspiring to do the same, in violation of 21 U.S.C. § 846, and to violating 18 U.S.C. § 1952(a)(3). He contends that the district court erred by: (1) adding two points to his offense level under U.S.S.G. § 3C1.1, for obstructing the administration of justice; (2) adding four points to his offense level under U.S.S.G. § 3B1.1(a), for his aggravating role in the offense; and (3) miscalculating his base offense level under U.S.S.G. §§ 2D1.1(a)(3) and 1B1.3. Bernaugh also complains that there was not a sufficient factual basis to support his guilty plea to a violation of 18 U.S.C. § 1952. We affirm.

The facts of this case are set out in full in our companion case of *United States v. Richard*, 969 F.2d 849. In brief, Bernaugh and six codefendants were arrested for their participation in a "reverse buy" of approximately 300 pounds of marijuana. This sting operation was conducted by the Oklahoma City Police Department. Four of Bernaugh's codefendants, Richard, Henley, Boyd, and Russell, proceeded to trial while Bernaugh chose to plead guilty on the eve of trial.

## A. OBSTRUCTION OF JUSTICE

The district court enhanced Bernaugh's offense level by two points for obstructing justice, *see* U.S.S.G. § 3C1.1, after it found that Bernaugh had provided materially false information at his guilty plea hearing with respect to the roles of his codefendants Richard, Henley, Boyd, and Russell.

The hearing on Bernaugh's guilty plea was conducted in open court, in the presence of Bernaugh's codefendants who were proceeding to trial. Bernaugh was placed under oath, and the following exchange occurred:

THE COURT: You understand this is a serious proceeding, that the proceeding here today could affect your sentencing, the type of sentence you receive in this matter and as a result any statement you make here today if you were to make false statements could also subject you to additional prosecution for perjury or false statements. Do you understand all of those things?

DEFENDANT BERNAUGH: Yes, Your Honor, I do understand.

. . . .

THE COURT: You understand if you try to protect anyone or hide information from the Court or conceal anything, that might affect the sentence that I ultimately decide to give you?

DEFENDANT BERNAUGH: Yes, I do, Your Honor.

. . . .

THE COURT: Well, let me just tell you, I'm going to ask him all the questions that I think are pertinent under the factual basis. You can explain whatever you want but eventually I'm going to have to hear it from Mr. Bernaugh because it's his factual basis that in my view governs.

MR. COX: Certainly. I understand that, Your Honor. I want the Court to understand that as stated in the Petition to Enter a Plea, Mr. Bernaugh is prepared and willing to enter a plea of guilty to conspiring with Mr. Wells, Mr. Guyton and Mr. Lewis to possess marijuana with intent to distribute.

THE COURT: Well, I understand that. Are you suggesting that I should not ask him questions about any of these remaining defendants?

MR. COX: Certainly the Court can. I want to let the Court know what we're doing.

THE COURT: It may be that I'll ultimately find that with respect to this charge that there is a factual basis only for a conspiracy with respect to Wells, Guyton and Lewis but I'll tell you I intend to ask him about the charge in the indictment which accuses him of engaging in a conspiracy with all these folks

and we need to have that understanding up front.

MR. COX: I understand.

THE COURT: It may be that he doesn't know about some of these other people but I'm going to listen to all the evidence in the case and it will be something I can take into consideration at the time of sentencing and something I need to consider in connection with making any findings.

R.Vol. VIII at 2–5.

Thereafter, the court quizzed Bernaugh in detail about his codefendants, and Bernaugh—as the court later found—extensively perjured himself regarding their participation. Essentially, Bernaugh testified that he invited the codefendants to accompany him under the guise of a party and that he never mentioned that a marijuana transaction would take place.

At Bernaugh's sentencing hearing two months later, and after his codefendants had been convicted at trial, the district court stated:

> The Court further notes that the guideline in question provides a nonexhaustive list for obstruction factors. That nonexhaustive list includes but again is not limited to providing materially false information to a judge. Here I recall in great detail the explanation that Mr. Bernaugh gave at the guilty plea proceeding concerning his role in the offense, how the other individuals who proceeded to trial came to join him on this trip, what they knew, what they did not know, and the Court also recalls the admonition that it gave to Mr. Bernaugh at the time of the guilty plea proceeding, namely that we needed the truth, the whole truth and nothing but the truth concerning his participation in the offense and, further, I recall in detail observing carefully his demeanor at the time he gave answers to my questions. His testimony simply did not ring true. Not only was it flatly contradicted by the evidence that I heard at trial as presented by the government but also I noted that the defendant Bernaugh in my judgment was doing exactly what I cautioned him not to do and that

is attempting to protect others who may be proceeding to trial and not wanting to get on the perhaps bad side of those folks. It was clear to me that he was doing everything he could to cover or protect friends and colleagues in the face of really overwhelming evidence of knowledge with respect to several of those individuals.

R.Vol. IX at 70–71.

The only objection lodged by Bernaugh to the imposition of the obstruction of justice enhancement was factual. His counsel argued that Bernaugh's testimony was truthful. *Id.* at 68–69.

In reviewing an application of the Guidelines, we will reverse the district court's factual findings only if clearly erroneous. 18 U.S.C. § 3742(e) (1990). "However, we will remand for resentencing if the Guidelines were incorrectly applied. 18 U.S.C. § 3742(f)(1)." *United States v. Urbanek,* 930 F.2d 1512, 1514 (10th Cir.1991).

Based on the record before us, we cannot say that the district court's factual findings were clearly erroneous. Thus, the only question is whether the district court correctly applied the guidelines to these facts. We find that it did.

U.S.S.G. § 3C1.1 provides for a two level enhancement "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." The Guidelines contemplate that an "offense" may include the concerted criminal activity of multiple participants. *See* U.S.S.G. CH. 3, Pt. B, Intro. comment. Consequently, the section 3C1.1 enhancement applies where a defendant attempts to obstruct justice in a case closely related to his own, such as that of a codefendant.

As illustrations of types of conduct to which the enhancement applies, the commentary mentions "committing, suborning, or attempting to suborn perjury," U.S.S.G. § 3C1.1, comment. (n. 3(b)), or "providing materially false information to a judge or

magistrate," *id.*, comment. (n. 3(f)).[1]

Here, the government offered both examples as grounds for the two-level enhancement. R.Vol. IX at 28. The district court adopted the same analysis. First, it relied on our holding in *United States v. Beaulieu*, 900 F.2d 1537, 1540–41 (10th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 3252, 111 L.Ed.2d 762 (1990), where we upheld an application of the enhancement (by the same district court) to a defendant who committed perjury at trial.[2] R.Vol. IX at 69–70. Next, while noting that here Bernaugh testified untruthfully at a plea hearing and not at trial, the district court "further note[d] that the guideline in question provides a nonexhaustive list for obstruction factors. That nonexhaustive list includes but again is not limited to providing materially false information to a judge." *Id.* at 70.

The district court did not err in applying this analysis. Before entering a judgment upon Bernaugh's guilty plea, the district court was required to make a factual "inquiry as shall satisfy it that there is a factual basis for the plea," Fed.R.Crim.P. 11(f), a task which appropriately led the district court to inquire into Bernaugh's role in the crime in relation to that of his codefendants. In order to avoid making incriminating statements as to the roles of his codefendants, Bernaugh, while testifying under oath, chose to provide false information to the court. He did so partly in hope that if he were believed his codefendants would avoid criminal punishment. Thus, while Bernaugh may have overestimated his ability to influence the prosecution of his codefendants, Bernaugh at least "*attempted* to ... impede the administration of justice during the investigation, prosecution, or sentencing of the instant offense," within the meaning of U.S.S.G. § 3C1.1 (emphasis added). Furthermore, while the district court did not make de-

tailed findings on the point, Bernaugh's perjury with respect to the actors associated with him in the transaction easily could be an attempt to affect his own sentencing, by impairing the court's inquiry under Fed. R.Crim.P. 11(f), obfuscating his role in the transaction, and otherwise. Accordingly, Bernaugh's sentence was properly enhanced under U.S.S.G. § 3C1.1.

## B. AGGRAVATING ROLE

 Bernaugh next contends that the district court erred by applying a four level enhancement to him as an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(a). He asserts that the district court erred in: (1) finding five or more participants, Appellant's Br. at 38; (2) impermissibly relying on evidence adduced at the trial of his codefendants, Appellant's Br. at 39; and (3) finding sufficient facts to establish that he was an "organizer or leader." Appellant's Br. at 40.

We review the district court's findings under § 3B1.1 under a clearly erroneous standard. *United States v. Litchfield*, 959 F.2d 1514, 1521 (10th Cir.1992); *United States v. Williams*, 897 F.2d 1034, 1040 (10th Cir.1990); *cert. denied*, — U.S. —, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991). To find a defendant an organizer or leader under § 3B1.1(a), there must be elements of control or organization of other people. *See United States v. Reid*, 911 F.2d 1456 (10th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991). An organizer or leader is someone more than "an important or essential figure." *Litchfield* at 1523. The defendant "must have exercised some degree of control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carry-

1. The commentary defines materiality in the following manner: "'Material' evidence, fact, statement, or information, as used in this section, means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination.'" *Id.*, comment. (n. 5).

2. The U.S.S.G. commentary at that time provided that "testifying ... concerning a material fact" was conduct that might justify a finding of obstruction of justice. *Id.* at 1538.

ing out the crime." *Reid,* 911 F.2d at 1464 (citation omitted).

The commentary and application notes to § 3B1.1 provide:

1. A "participant" is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (*e.g.,* an undercover law enforcement officer) is not a participant.

2. In assessing whether an organization is "otherwise extensive," all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.

3. In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

U.S.S.G. § 3B1.1, comment. (nn. 1–3).

■ Bernaugh claims that in making its finding, the district court erred by relying in part on information presented at the trial of his codefendants Richard, Henley, Boyd, and Russell. This was not error. In making its finding, the court can use any reliable evidence, including hearsay testimony

from a separate trial. *United States v. Beaulieu,* 893 F.2d 1177, 1181 (10th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990).

■ Bernaugh also contends that the district court erred in calculating the number of participants involved in the marijuana transaction. The court stated:

As to the five or more participants, I do in fact find that the participants included but were not necessarily limited to Russell and Henley and Mr. Lewis, Mr. Bernaugh, Mr. Wells, Mr. Guyton.... The Court need not find that the individuals who testified at trial that they had no knowledge of this transaction did in fact have knowledge, although I would make such a finding based on the jury's verdict in this case and based on my review of the evidence because ... they could even qualify for purposes of computation under this guideline as unknowing outsiders. I find clearly that there were at least five participants. I further note for the record that there's no requirement that he be the organizer or the leader in this specific transaction.

R.Vol. IX at 58.[3] The district court's finding that five or more participants were involved in the criminal activity charged here is not clearly erroneous.

The proper enhancement level under § 3B1.1 turns on whether Bernaugh was an "organizer or leader" for the purposes of § 3B1.1(a) or was a "manager or supervisor" under § 3B1.1(b). The Guidelines do not provide a clear way to differentiate the two categories. Instead, Application Note 3, set out above, lists a number of factors the court should consider. The Guidelines do not require that each of the factors be satisfied for § 3B1.1(a) to apply.

The district court found that Bernaugh was an "organizer or leader" for purposes of § 3B1.1(a) in this marijuana transaction. The court noted:

With respect to this particular defendant I find by a preponderance of the evidence

---

**3.** While the quoted language here was directed to Bernaugh's codefendant Larry Guyton, the court incorporated these findings in Bernaugh's sentencing. The court stated, "I find that there were five or [more] marijuana participants for the reasons I outlined in Mr. Guyton's sentencing." R.Vol. IX at 73.

that the government's position is accurate. He was the "moneyman" or "banker." That in and of itself given the other factors that I have described here, the number of people, the complexity of the operation and the scheme, the number of states and people and telephone calls that it involved, qualifies him as an organizer or leader in my view. The Court also notes that he did in fact, contrary to some of the suggestions today, participate in negotiations. I think the evidence at trial which I can properly consider showed through Detective Danner's testimony which I think was credible, that he was a negotiator, that he was a principal player in this organization.... I further find that his taking the possession of this large quantity of marijuana is another factor which should be considered for purposes of the organization or leadership role. I also find that he was involved in the recruitment of other individuals to come on this venture. That places him in an organization or leadership role and his provision of transportation and expenses to Oklahoma City is an additional factor. So for all those reasons I find by a preponderance of the evidence that the government has sustained their position....

R.Vol. IX at 73–74.

At his guilty plea hearing, Bernaugh admitted that he recruited Richard, Henley, Boyd, and Russell to come with him, R.Vol. VIII at 14, 21. He also does not challenge the allegations that he was the "moneyman" or "banker" referred to in the tape recorded conversations with Detective Danner, and that he provided transportation and expenses for the individuals he recruited to the scene of the drug transaction. R.Vol. IX at 24. There was also evidence that Bernaugh engaged in negotiations concerning the transaction and that he took possession of at least seven of the eight boxes of marijuana prior to his arrest. *Id.* at 24–25.

The district court's application of the § 3B1.1(a) four level enhancement for Bernaugh's role as a leader or organizer was not clearly erroneous.

## C. QUANTITY OF DRUG

Bernaugh next argues that the district court erred in calculating his base offense level under U.S.S.G. § 2D1.1(a)(3). He contends that he is only criminally responsible for 200 of the 300 pounds of marijuana involved in the transaction.[4]

Bernaugh concedes that U.S.S.G. § 1B1.3(a)(1) applies. That subsection provides that relevant conduct includes "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable ... or that otherwise were in furtherance of that offense." The commentary notes that "[i]n the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3, comment. (n. 1). Thus, the issue is whether the additional 100 pounds of marijuana were in furtherance of the criminal activity and were reasonably foreseeable by Bernaugh.

The government must prove the quantity of drugs by a preponderance of the evidence. *United States v. Cook*, 949 F.2d 289, 295 (10th Cir.1991). We review this determination under a clearly erroneous standard, and will not disturb it unless it has no support in the record or, after reviewing all the evidence, we are firmly convinced that an error has been made. *Id.* at 296. We have previously rejected the contention that a defendant is only responsible for the quantity of drugs that the government has proven the individual personally handled. *United States v. Williams*, 897 F.2d 1034, 1041 (10th Cir.

---

4. One pound is equivalent to 0.4536 kilograms (Kg.). U.S.S.G., Measurement Conversion Table, § 2D1.1, n. 10. 200 pounds of marijuana equals approximately 91 Kg. which results in a base offense level of 24 under § 2D1.1.(c)(10). 300 pounds is equivalent to approximately 136 Kg. yielding a base offense level of 26 under § 2D1.1.(c)(11).

1990), *cert. denied,* ——— U.S. ———, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991). The record supports the district court's finding that 300 pounds is the proper quantity of marijuana chargeable to Bernaugh. "The amounts upon which a defendant may be sentenced include such amounts as it is shown that [ ]he either knew or should have known were involved in the conspiracy." *United States v. Sanders,* 929 F.2d 1466, 1475 (10th Cir.), *cert. denied,* ——— U.S. ———, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991).

As part of his guilty plea allocution, Bernaugh admitted that he did in fact possess with intent to distribute approximately 298 pounds of marijuana. R.Vol. VIII at 25. In finding by a preponderance of the evidence that U.S.S.G. § 1B1.3 had been satisfied, the district court ruled implicitly that Bernaugh either knew or should have known that his transaction involved approximately 300 pounds of marijuana. *See* R.Vol. IX at 68. Further, there is no evidence in the record that Bernaugh was carrying $200,000 in an effort to purchase only 200 pounds of marijuana.[5] The district court did not clearly err in applying a base offense level of 26.

### D. FACTUAL BASIS SUPPORTING 18 U.S.C. § 1952 PLEA

Bernaugh next argues that there is an insufficient factual basis to support his conviction for violation of 18 U.S.C. § 1952,[6] which was count 13 of the indictment. He asserts that: (1) his conduct could not constitute a violation of 18 U.S.C. § 1952 as a matter of law; and (2) even if his conduct could legally constitute a violation of the section, the court failed to find

sufficient facts to enter a judgment of conviction as required by Fed.R.Crim.P. 11(f).[7] Appellant's Br. at 48.

We review the district court's decision regarding the factual basis for a guilty plea for an abuse of discretion. *United States v. Elias,* 937 F.2d 1514, 1517 (10th Cir.1991). First, Bernaugh argues that his activities do not constitute a "business enterprise" under the statute since he was engaging in a "one time, one shot marijuana venture." Appellant's Br. at 48. Hence, he concludes, there is no legal basis on which to ground a conviction for violating 18 U.S.C. § 1952. We have held that the term "business enterprise" for purposes of § 1952(b)(1) "means a continuing course of conduct rather than sporadic casual involvement in a proscribed activity." *United States v. Kendall,* 766 F.2d 1426, 1434 (10th Cir.1985) (citations omitted), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986); *United States v. Fox,* 902 F.2d 1508, 1518 (10th Cir.), *cert. denied,* ——— U.S. ———, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990). Apparently, Bernaugh's argument is that, as a matter of law, a single transaction cannot constitute a "business enterprise."

We reject that proposition. It is possible that a court could conclude from even a single transaction that a defendant's involvement in a proscribed activity is more than "sporadic" or "casual." *See United States v. Johnson,* 961 F.2d 1488, 1491–92 (10th Cir.1992). That conclusion is warranted from the record here. Bernaugh admitted that he had "intimated" in prior conversations with codefendant Larry Guyton that he desired 200 pounds of marijuana. R.Vol. VIII at 13. Bernaugh also

---

5. The evidence indicates that the defendants intended to pay approximately $650 per pound of marijuana. *See* Bernaugh Presentence Report at 3, ¶ 3. The $200,000 Bernaugh was carrying is more consistent with a purchase of 300 pounds of marijuana (costing approximately $195,000) than with a purchase of 200 pounds (costing approximately $130,000).

6. 18 U.S.C. § 1952, the Travel Act, provides in pertinent part:
 (a) Whoever travels in interstate or foreign commerce ... with intent to—
 (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, manage-

ment, establishment, or carrying on, of any unlawful activity,
and thereafter performs or attempts to perform any of the acts specified in subparagraph[ ] ... (3) ...
 (b) As used in this section (i) "unlawful activity" means (1) any business enterprise involving ... narcotics or controlled substances....

7. Fed.R.Crim.P. 11(f) provides: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

arrived in Oklahoma City with sufficient funds to purchase 300 pounds of marijuana. It is clear both from the quantities of illicit drugs involved and Bernaugh's admitted past association with Guyton that Bernaugh's interest here was more than the "sporadic" or "casual" involvement associated with a "one time, one shot" participation in drug activity.

Next, Bernaugh argues that the court failed to find a sufficient factual basis to support entering a judgment of conviction for violation of the section. The district court's inquiry is designed to satisfy the court that a factual basis exists, subject to adequate support in the record that there is a sufficient basis for the conclusion that the defendant's conduct falls within the charge. *See Semet v. United States*, 422 F.2d 1269, 1271–72 (10th Cir.1970).

"The elements necessary for a successful prosecution under the Travel Act are: (1) travel or use of facilities in interstate commerce; (2) with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of a prohibited activity ...; and (3) subsequent attempt to commit or actual commission of the proscribed activity." *United States v. Davis*, 965 F.2d 804, 809 (10th Cir.1992); *United States v. Dorrough*, 927 F.2d 498, 502 (10th Cir.1991).

Our review of the record reveals that the court identified a sufficient factual basis to conclude that the government satisfied all the elements of a Travel Act prosecution. Bernaugh travelled in interstate commerce, with the intent to carry on or facilitate the carrying on the purchase of narcotics, and committed or attempted to commit that purchase of marijuana. The district court did not abuse its discretion in accepting Bernaugh's guilty plea to the count involving a violation of the Travel Act.

For the reasons stated above, the judgment of sentence and conviction imposed below is AFFIRMED.