**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 30 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MICHAEL E. WEBB,

      Defendant-Appellant.

No. 99-5072
(N. District of Oklahoma)
(D.C. No. 98-CR-68-K)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **McKAY,** and **MURPHY**, Circuit Judges.

## I.  INTRODUCTION

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The court, therefore, honors the parties' requests and orders this case submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Michael E. Webb pleaded guilty to one count of conspiracy to falsify claims to a government agency, through the filing of false income tax returns, in violation of 18 U.S.C. § 286. In calculating Webb's sentence under the United States Sentencing Guidelines ("U.S.S.G"), the district court added four points to Webb's base offense level pursuant to U.S.S.G. § 3B1.1(a), finding that Webb was "an organizer or leader of a criminal activity that involved five or more participants." Webb appeals, contending that the district court's conclusion that he was an organizer or leader of the conspiracy is arbitrary and without sufficient evidentiary support. This court exercises jurisdiction pursuant to 28 U.S.C. 1291 and 18 U.S.C. § 3742 and **affirms**.

## II.  BACKGROUND

The facts, stated in the light most favorable to the district court's ruling following the sentencing hearing, are as follows. In November of 1994, Derrick Ward, Michael E. Webb, James W. Hart, and other unidentified inmates befriended each other while they were serving state prison sentences in the custody of the Oklahoma Department of Corrections. A few days into their friendship, Webb and Hart entered into a conspiracy to falsify federal income tax returns. Webb then recruited Ward to participate in the conspiracy to file false federal income tax returns. Hart had access to the printing shop within the

institution and the wherewithal to reproduce many of the necessary forms. Furthermore, Hart had apparently participated in a similar scheme several years earlier at a different correctional facility. Webb, on the other hand, had the financial and accounting background necessary to develop a formula that would be used to complete the false returns. Ward recruited his mother and girlfriend into the conspiracy because the conspiracy needed individuals on the outside to handle the false returns and refund checks.

According to the testimony of Ward and Hart at the sentencing hearing, Webb provided Hart with all of the necessary information to be entered on the fraudulent tax forms. Webb instructed Hart as to the proper way to complete the forms, and Hart utilized the equipment at the institution to copy and complete the forms. After completion of the forms, Hart and Webb prepared the documents for mailing.

Hart provided the name and address of an aunt, Willie Mac Evans of Terry, Mississippi, as a person to receive fraudulent income tax documents and forward them to the IRS. Evans was mailed an envelope containing twelve fraudulent income tax returns in 1995. The package containing the fraudulent tax returns apparently bore the return address of Webb at the prison and Webb's name and inmate number. Evans was unwilling to participate in the criminal scheme and returned the package containing the fraudulent documents to Webb at the

Department of Corrections. The returned package was recovered by officials at the prison.

Ward recruited his mother into the criminal endeavor. Girva Ward agreed that she would allow Webb to mail, from prison, fraudulent income tax returns, marked as "legal mail," to her personal post office box. Girva Ward also agreed that upon receipt of Webb's package, she would open the material and further forward the pre-stamped contents to IRS centers throughout the United States for processing. Ward also solicited his girlfriend, Bridgett Naytah, to receive and forward fraudulent tax refunds in the same fashion.

An investigator with the Oklahoma Department of Corrections identified as suspicious one of the packets of false tax returns. The legal-sized envelope was addressed to "Attorney: Girva Ward," in Tulsa, Oklahoma, and it carried Webb's return address at the correctional center. The packet contained smaller envelopes, each of which contained a 1994 federal income tax return, all of which were later identified as fraudulent by IRS investigators.

As a follow-up, the Oklahoma Department of Corrections contacted the IRS and forwarded them the suspect tax returns. Within the next few days, the IRS identified the thirteen tax returns as fraudulent and an investigative, controlled delivery was arranged. The packet was sent to Girva Ward's post office box; Girva Ward removed the decoy envelope from her post office box and mailed the

individual envelopes to the IRS.  Authorities thereafter placed two decoy refund checks into Girva Ward's post office box. After investigators observed Ward pickup the decoy checks, they followed her to her residence where she was confronted and the checks were recovered.

In addition to the twelve tax returns which had been returned to Webb by Evans, and thirteen tax returns forwarded to Girva Ward, the IRS detected fifteen additional returns which had been filed and were associated with this scheme. None of the fraudulent returns filed with the IRS were subsequently paid out.

Hart, Ward, and Girva Ward all entered pleas of guilty to violating 18 U.S.C. § 286.  Hart and Ward are serving prison sentences in the custody of the United States Bureau of Prisons; Girva Ward is serving a forty-two month probationary sentence.

### III.  ANALYSIS

U.S.S.G. § 3B1.1(A) provides that a defendant's offense level shall be increased by four points "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  The government bears the burden of proving by a preponderance of the evidence the facts necessary to establish the applicability of this enhancement. *See United States v. Cruz Camacho*, 137 F.3d 1220, 1224 (10th Cir. 1998).  In

determining whether a defendant is a leader or organizer, a court should consider

the following factors:

> the exercise of decision making authority, the nature of participation
> in the commission of the offense, the recruitment of accomplices, the
> claimed right to a larger share of the fruits of the crime, the degree of
> participation in planning or organizing the offense, the nature and
> scope of the illegal activity, and the degree of control and authority
> exercised over others.

U.S.S.G. § 3B1.1, comment (n.4.).  Nevertheless, "[t]he Guidelines do not require

that each of the factors be satisfied for § 3B1.1(a) to apply."  *United States v.*

*Bernaugh*, 969 F.2d 858, 863 (10th Cir. 1992).

After conducting an evidentiary hearing at which, among others, two of

Webb's coconspirators testified, the district court found as follows:

> The objection of the defendant to the four level enhancement is
> denied, although, it's certainly hard to tell from the testimony and the
> Grand Jury testimony tody and the prior Grand Jury testimony when
> and if anyone in this conspiracy is telling the truth.  The scheme, the
> Court finds likely started prior to this defendant's imprisonment and
> in fact there's some indication it may have been widespread in the
> prison system at the time.
> Mr. Hart indicates in his Grand Jury testimony that he received
> money from Marcus Miller in a similar scheme back as far as 1988 or
> 1989.  The initial idea may have been Hart's, but Mr. Webb had the
> intelligence to create the formula and see that the returns were
> properly filled out.  If he was recruited, once he was recruited he
> became an organizer and a leader.  He recruited others to help with
> the returns, to provide information to fill out forms, to provide
> stamps.  He made the agreement with Mr. Ward to provide his
> mother's and girlfriend's post office boxes.  He took on a leadership
> role in that regard.
> He was to get at least half of the money, and there's certainly
> evidence that he was to get a larger share than 50 percent.  He and

Mr. Hart apparently signed the returns or the majority of the returns, and it appears from the evidence that the Defendant Webb mailed the packages. His fingerprints were on the returns. It appears from all of the evidence in the cases, even that evidence which is admittedly contradictory, that he had decision making authority and that he was an organizer or leader of a criminal activity that involved five or more participants.

Webb's challenge to the district court's imposition of the four level upward adjustment set out in § 3B1.1 is exceedingly narrow. He does not contest the district court's conclusion that the conspiracy involved at least five people and does not contend that the district court's decision is based on an erroneous reading of the sentencing guidelines. Instead, he simply asserts that the district court's ultimate finding that he was a leader or organizer of the conspiracy is not supported by sufficient evidence. This court reviews the district court's ultimate finding that Webb was a leader or organizer under the highly deferential clear error standard. *See Cruz Camacho*, 137 F.3d at 1223-24 & n.2. Under that deferential standard, this court will reverse the district court only if the district court's ultimate finding is without factual support in the record or, after reviewing all of the evidence, "this court is left with the definite and firm conviction that a mistake has been made." *United States v. Mandilakis*, 23 F.3d 278, 280 (10th Cir. 1994).

A close review of the transcript of the sentencing hearing reveals ample evidentiary support for the district court's finding that Webb was a leader and/or

organizer, under those factors set forth in the commentary to § 3B1.1, of the false-income-tax-return conspiracy. Webb's coconspirators, Hart and Ward, testified at the sentencing hearing that it was Webb and Hart that devised the scheme to create the false tax returns.[1] Hart and Ward further testified that it was Webb who provided the wherewithal to accomplish the criminal objective by applying his college course work in personal income tax and accounting and his access to IRS tax preparation instructional manuals to create a formula that could be used to generate tax returns that would yield refunds. According to Hart and Ward, Webb then helped coordinate the implementation of the conspiracy by: (1) recruiting Ward to supply two sources on the outside of prison who would mail the fraudulent returns and then receive the fraudulent refunds; (2) recruiting inmates to reproduce and complete the necessary tax forms; and (3) recruiting

---

[1]Webb asserts on appeal that this court should not credit the testimony of Hart and Ward because the testimony of each is inconsistent with their earlier testimony before the grand jury. Having read the transcript of the grand jury proceedings prior to the sentencing hearing, the district court was fully aware of the inconsistencies between the testimony of Hart and Ward before the grand jury and their testimony at the sentencing hearing. Although it found these inconsistencies troubling, the district court ultimately decided to credit the testimony of Hart and Ward as it related to Webb's involvement in the conspiracy. This court is in no position to second guess the district court's credibility determination, made as it was after observing the demeanor of Hart and Ward during the sentencing hearing. *See United States v. Deninno*, 26 F.3d 572, 578 (10th Cir. 1994) ("The credibility of a witness at sentencing is for the sentencing court, who is the trier of fact, to analyze.").

individuals to procure postage stamps from the prison canteen.[2]  Furthermore, as noted by the district court, Webb signed many of the false tax returns himself as evidenced by Webb's finger prints appearing on five separate returns.[3]  Ward and Hart testified that Webb decided when the three large packages of returns should be mailed and mailed those packages himself.  Furthermore, Webb made the arrangements to cash the refund checks in Oklahoma City when they were received.  Finally, although vigorously contested by Webb, the testimony of Ward, Hart, and Agent Garner, support the district court's finding that Webb was to receive at least half, and possibly more, of the proceeds of the conspiracy.[4]  In

[2]Webb seems to take great comfort in Hart's testimony at the sentencing hearing to the effect that Hart considered himself and Webb to be co-equals in the management of the conspiracy.  The commentary to § 3B1.1 specifically provides, however, that "There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S.S.G. § 3B1.1, comment (n.4.).  That Hart might have also qualified as a leader or organizer of the conspiracy in no way diminishes the district court's conclusion that Webb was also a leader and/or organizer of the conspiracy.

[3]Webb seems to assert that the fact that his fingerprints only appeared on five of the returns demonstrates he was only a minor player in the conspiracy.  The fact is, however, that no fingerprints were found on the majority of the returns.  Nevertheless, Webb's fingerprints appeared on more returns than did the fingerprints of any of the other co-conspirators.

[4]For instance, Ward specifically testified that Webb told him that each of the fraudulently obtained refund checks would be in the amount of $5400.  Of that amount, Ward would receive $1000 for each of the returns that flowed from the packets sent to his mother's and girlfriend's post office boxes.  Furthermore, Hart testified that he was only to share in a percentage of those returns that flowed from the packet sent to his aunt in Mississippi.  Finally, based upon his analysis of where the fraudulent refund checks were to be directed, Agent Garner

light of this testimony and in light of those factors set out in the commentary to the sentencing guidelines, this court concludes the district court did not clearly err in concluding that Webb was a leader or organizer of the false-income-tax-return conspiracy and, therefore, subject to a four-point increase in his offense level pursuant to U.S.S.G. § 3B1.1(a).

## IV. CONCLUSION

For those reasons set out above, the sentence imposed by the United States District Court for the Northern District of Oklahoma is hereby **AFFIRMED**.

ENTERED FOR THE COURT:

Michael R. Murphy
Circuit Judge

concluded that Webb would have obtained the "lion's share" of the fraudulent-refund proceeds.

-10-